NEW YORK LIFE INSURANCE CO., Appellant, v. DEER
LODGE COUNTY, Respondent.

(No. 2,991.)

(Submitted April 8, 1911. Decided April 25, 1911.)

[115 Pac. 911.]

*Interstate Commerce—Life Insurance—Taxation—Constitution.*

Interstate Commerce—Insurance Companies—Excess of Premiums Over
Losses—Taxation.
  1.  Revised Codes, section 4073, providing that every insurance com-
  pany transacting business in the state must be taxed upon the excess
  of premiums over losses and ordinary expenses within the state during
  the previous year, applies only to business transacted within the state,
  and is not objectionable as an interference with interstate commerce.
Same—Subjects of Regulation—Insurance.
  2.  The business of life insurance conducted in the state by a foreign
  corporation under a certificate of authority from the state, collecting
  premiums and paying losses on policies and making loans to policy-
  holders on the security of their policies, is not "commerce" within sec-
  tion 8, Article I, United States Constitution.

*Appeal from District Court, Deer Lodge County; Geo. B.
Winston, Judge.*

Action by the New York Life Insurance Company against
Deer Lodge County. Judgment for defendant, and plaintiff
appeals. Affirmed.

*Mr. James H. McIntosh,* and *Mr. R. L. Clinton,* for Appellant,
submitted a brief. *Mr. Clinton* argued the cause orally.

The transaction of the business of life insurance in the man-
ner described in the appellant's complaint is interstate com-
merce. What interstate commerce is has been a subject prolific
of discussion and dispute. In the leading case of *Gibbons* v.
*Ogden,* 9 Wheat. (U. S.) 1, 6 L. Ed. 23, Mr. Chief Justice
Marshall said: "Commerce, undoubtedly, is traffic, but it is
something more—it is intercourse." In its largest sense, it
consists of interstate intercourse and traffic in all their forms.
It embraces all contracts of purchase, sale or exchange of prop-
erty to be transported among the several states, and the arti-
cles bought, sold or exchanged for the purpose of such transit,

as well as the interstate transportation and transit of persons and property, and the agencies employed therein. (*Gibbons* v. *Ogden,* 9 Wheat. (U. S.) 1, 63 L. Ed. 23; *The Daniel Ball,* 10 Wall. (U. S.) 557, 19 L. Ed. 999; *County of Mobile* v. *Kimball,* 102 U. S. 691, 26 L. Ed. 238; *Kidd* v. *Pearson,* 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346; *United States* v. *Knight & Co.,* 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325.) The power to regulate commerce is the power to prescribe the rules by which commerce shall be governed. It presupposes the existence of commerce. It is a power "complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the Constitution." (*Gibbons* v. *Ogden,* 9 Wheat. (U. S.) 1, 63 L. Ed. 23; *United States* v. *Knight & Co.,* *supra.*) It includes every regulation that directly and immediately, but not indirectly or remotely, affects interstate intercourse and traffic, whether the regulation affects the contract of purchase, sale or exchange of property to be transported among the states, or the articles bought, sold or exchanged for the purpose of such transit, or the interstate transportation and transit of persons and property, and the agencies employed therein. (*Sherlock* v. *Alling,* 93 U. S. 99, 23 L. Ed. 819; *Hall* v. *De Cuir,* 95 U. S. 485, 24 L. Ed. 547; *Kidd* v. *Pearson,* 128 U. S. 23, 9 Sup. Ct. 6, 32 L. Ed. 346; *Nashville Ry. Co.* v. *Alabama,* 128 U. S. 101, 9 Sup. Ct. 28, 32 L. Ed. 352; *New York, N. H. & H. R. R.* v. *New York,* 165 U. S. 631, 17 Sup. Ct. 418, 41 L. Ed. 853; *M., K. & T. Ry.* v. *Haber,* 169 U. S. 630, 18 Sup. Ct. 488, 42 L. Ed. 878; *Hopkins* v. *United States,* 171 U. S. 594, 19 Sup. Ct. 40, 43 L. Ed. 290; *Anderson* v. *United States,* 171 U. S. 618, 19 Sup. Ct. 50, 43 L. Ed. 300; *Lake Shore & M. Co.* v. *Ohio,* 173 U. S. 298, 19 Sup. Ct. 465, 43 L. Ed. 702.)

The tax in question is a burden upon interstate commerce, and is therefore void. It is claimed to be a privilege or franchise tax. The state has no power to impose a tax or burden upon the privilege of doing the business of interstate commerce. (*Northwestern Mutual Life Co.* v. *Lewis and Clark County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982.) Interstate commerce cannot be taxed

at all, even although the same amount of tax should be laid on domestic business of the same kind or class. (*Robbins* v. *Shelby County*, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; *Norfolk etc. Ry. Co.* v. *Pennsylvania*, 136 U. S. 114, 10 Sup. Ct. 958, 34 L. Ed. 394; *Corson* v. *Maryland*, 120 U. S. 502, 7 Sup. Ct. 655, 30 L. Ed. 699; *Brown* v. *Maryland*, 12 Wheat. (U. S.) 419, 6 L. Ed. 678; *Clyde Steamship Co.* v. *Charleston*, 76 Fed. 46; *American Company* v. *North Carolina*, 43 Fed. 609, 11 L. R. A. 179.)

In behalf of Respondent, there was a brief by *Mr. Albert J. Galen*, and *Mr. J. A. Poore. Mr. Poore* argued the cause orally.

Section 4073, Revised Codes, being the section under which the tax complained of was levied, taxes only "The excess of premiums received over losses and ordinary expenses incurred within the state," and does not attempt in any manner to tax interstate commerce. But, in addition to this fact, the business of insurance is not "commerce" within the meaning of the federal Constitution providing that Congress shall have power "to regulate commerce with foreign nations and among the several states," and this has been decided by the supreme court of the United States in a number of cases. (See *Paul* v. *Virginia*, 8 Wall. (U. S.) 183, 19 L. Ed. 357.) This decision has been followed and upheld in numerous cases by that court, and the rule there announced has been held to apply to all kinds of insurance contracts. (*Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566, 19 L. Ed. 1029; *Ducat* v. *Chicago*, 10 Wall. 410, 19 L. Ed. 972; *Hooper* v. *California*, 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297; *New York Life Ins. Co.* v. *Cravens*, 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116; *Phila. Fire Assn.* v. *New York*, 119 U. S. 110, 7 Sup. Ct. 108, 30 L. Ed. 342; *Nutting* v. *Massachusetts*, 183 U. S. 553, 22 Sup. Ct. 238, 46 L. Ed. 324; *Western Union* v. *Kansas*, 216 U. S. 45, 30 Sup. Ct. 190, 54 L. Ed. 355.)

The state has the power to exclude foreign insurance companies altogether from its territory. It also has the power, if

it allows any such company to enter its confines, to determine the conditions on which the entry shall be made. And, as a necessary consequence of the possession of these powers, it has the right to enforce any conditions imposed by its laws as preliminary to the transaction of business within its confines by a foreign corporation, whether the business is to be carried on through officers or through ordinary agents of the company. The power to exclude embraces the power to regulate, to enact and enforce all legislation in regard to things done within the territory of the state which may be directly or incidentally requisite in order to render the enforcement of the conceded power efficacious to the fullest extent. (*Hooper* v. *California*, 155 U. S. 655, 15 Sup. Ct. 207, 39 L. Ed. 297; *Nutting* v. *Massachusetts*, 183 U. S. 553, 22 Sup. Ct. 238, 46 L. Ed. 324; *Security National* v. *Prewitt*, 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013, 6 Ann. Cas. 317.) And the state, having the power to exclude entirely, has the power of changing the conditions of admission at any time, for the future, and to impose as an addition the payment of a new tax, or a further tax, as a license fee. (*Philadelphia Fire Assn.* v. *New York*, 119 U. S. 119, 7 Sup. Ct. 108, 30 L. Ed. 342.) If the state has the power to exclude a foreign insurance company from engaging in business within its boundaries, and to provide rules and regulations under which it may be admitted, it certainly has the right to enforce these rules and regulations and to require it to bear the same burdens which may be imposed upon the home institutions of the state.

We have carefully read each of the decisions cited by appellant, and we are unable to find in any of them a statement of law that a foreign insurance company doing business in another state than that of its creation is engaged in interstate commerce, or that such insurance company could not be required to pay the license fees and taxes prescribed by such foreign state. All that any of the cases cited hold is that a state cannot tax interstate commerce, and determining in certain instances what interstate commerce is under the federal Constitu-

tion, but no case cited has any bearing upon the question as presented in the case at bar.

The identical question presented here was decided by this court in the case of *Northwestern Mutual Life Ins. Co.* v. *Lewis & Clark County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982.

MR. JUSTICE SMITH delivered the opinion of the court.

The plaintiff is a life insurance company, incorporated under the laws of the state of New York, doing a general life insurance business in every country of the civilized world, including all of the states, territories, and possessions of the United States. During the year 1909 it received from policy-holders residing in Deer Lodge county in this state premiums aggregating the sum of $14,233.41. The insurance losses sustained and the ordinary expenses incurred, in the county, during the year amounted to $8,888.41; the excess of premiums over losses and ordinary expenses being the sum of $5,345. In the year 1910 the county assessor of the county, claiming to act by virtue of section 4073, Revised Codes, placed the plaintiff's name on the assessment-roll as the owner of personal property in the said sum of $5,345, and thereupon the taxing authorities imposed a tax against it in the sum of $209.79, based upon said excess of premiums over losses and ordinary expenses. This latter sum it paid under protest, and this action was brought to recover the same. It is alleged in the complaint that ''all the business of the plaintiff now doing or hitherto done with the state, or with residents, citizens, or inhabitants thereof, * * * is interstate intercourse, and is commerce among the several states, within the meaning of that clause of section 8, Article I, of the Constitution of the United States, which invests the Congress with power to regulate commerce among the several states. * * * Said tax was and is illegal, unlawful, and void, for that said defendant was without jurisdiction to levy or collect said tax, and the levy and collection thereof was and is a burden upon interstate commerce.'' The district court

of Deer Lodge county sustained a general demurrer to the complaint, whereupon plaintiff refused to further plead, and judgment was entered in favor of the defendant. The appeal is from the judgment. Appellant's contention is that the tax was illegal and void, for the reasons set forth in the complaint.

Section 4073, Revised Codes, reads as follows: "Each and every insurance corporation or company transacting business in this state must be taxed upon the excess of premiums received over losses and ordinary expenses incurred within the state during the year previous to the year of listing in the county where the agent conducts the business, properly proportioned by the corporation or company at the same rate that all other personal property is taxed, and the agent shall render the list, and be personally liable for the tax; and if he refuse to render the list or to make affidavit that the same is correct, to the best of his knowledge and belief, the amount may be assessed according to the best knowledge and discretion of the assessor. Insurance companies and corporations are subject to no other taxation under the laws of this state, except taxes on real estate and the fees imposed by law."

Several paragraphs of the complaint are devoted to a narration of the manner in which the business of life insurance is carried on and transacted between the plaintiff and its policy-holders. Among others we find paragraph 5, which we quote: "Said several policies provide for advances or loans to the policy-holder on the pledge of the policy as security, and pursuant to said provision the plaintiff has outstanding advances or loans made to its policy-holders in said state aggregating the sum of, to-wit, $432,878. For more than ten years last past the plaintiff has had outstanding advances or loans to policy-holders in said state aggregating a large sum. Said loans have each and all been made by the policy-holder transmitting to the home office of the plaintiff an application for the loan, which said application the plaintiff considered and acted upon at its home office, and, if it accepted it, the plaintiff made out at its home office a loan agreement which it forwarded by mail for execution, and, after executing it, the policy-holder forwarded

the loan agreement and the policy to the home office, and, on receipt thereof at its home office, the plaintiff forwarded the proceeds of the loan by mail to the policy-holder within said state by the plaintiff's check drawn to the policy-holder's order on its bank account in the city of New York. In this manner the plaintiff is continuously making advances to its policy-holders in Montana.'' Whether this and other paragraphs of the complaint were inserted in order to distinguish the case from that of *Northwestern Mutual Life Ins. Co.* v. *Lewis & Clark County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982, and other cases herein cited, we do not know. At the argument no suggestion to that effect was advanced, and we find nothing of it in the printed brief. We shall therefore assume that the plaintiff company is engaged in the same general line of business as was the plaintiff in *Northwestern Mutual Life Ins. Co.* v. *Lewis & Clark County.*

In *Paul* v. *Virginia,* 8 Wall. 168, 183, 19 L. Ed. 357, the supreme court of the United States, speaking through Mr. Justice Field, said: ''Issuing a policy of insurance is not a transaction of commerce. The policies are simply contracts of indemnity against loss (by fire), entered into between the corporations and the assured, for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts are not interstate transactions, though the parties may be domiciled in different states.'' See, also, *Ducat* v. *Chicago,* 10 Wall. 410, 19 L. Ed. 972, *Philadelphia Fire Assn.* v. *New York,* 119 U. S. 110, 7 Sup. Ct. 108, 30 L. Ed. 342, *Hooper* v. *California,* 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297, *Nutting* v. *Massachusetts,* 183 U. S. 553, 22 Sup. Ct. 238, 46 L. Ed. 324, and *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 45, 30 Sup. Ct.

190, 54 L. Ed. 355; also the case of *New York Life Ins. Co.* v. *Cravens*, 178 U. S. 389, 401, 20 Sup. Ct. 962, 967, 44 L. Ed. 1116, where the court again said, in a cause to which this appellant was a party: "The business of insurance is not commerce."

But the question here involved has been decided in this state in *Northwestern Mutual Life Ins. Co.* v. *Lewis and Clark* [1] *County, supra*, although it does not appear from the report of that decision that section 8, Article I, of the federal Constitution, was in terms invoked by the plaintiff. The court in that case said: "The legislature has the right to prescribe reasonable terms upon which foreign corporations may do business in this state. The character, kind, and amount of business done by the company, as well as the *situs* of its tangible property, may be considered in applying the various systems of taxation. The franchise of a corporation is granted by the jurisdiction where the company is incorporated, and its *situs* is in the state or country of its origin; but, before the company can do business in this state, it must comply with the terms of the statute relating thereto, and upon such compliance a certificate of authority is issued to it. It then stands under this law on the same footing with domestic companies, and is subject to the same taxation on the same class of property. This certificate of authority issued to a foreign insurance company confers upon such company a privilege or right not possessed or enjoyed by citizens generally, and not conferred upon it by its original franchise. This right or privilege so conferred is in that sense a franchise, and by it the company is authorized to establish, conduct, and maintain an insurance business, the value of which is ascertained in the manner prescribed by statute; that is, 'the excess of premiums over losses and ordinary expenses incurred.' It applies only to business transacted within the state, and is not objectionable as interfering with interstate commerce."

We therefore hold that the life insurance business from which arose the excess of premiums over losses and ordinary expenses upon which the assessor of Deer Lodge county levied a tax is

[2]   not interstate business, and is not commerce within the meaning of section 8, Article I, of the federal Constitution.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Appeal taken to supreme court of the United States, June 17, 1911.

