MILLER INSURANCE AGENCY, APPELLANT, v. PORTER, STATE AUDITOR, ET AL., RESPONDENTS.

(No. 7,095.)

(Submitted February 15, 1933. Decided March 13, 1933.)

[20 Pac. (2d) 643.]

*Mr. A. G. Shone* and *Mr. H. L. Maury,* for Appellant, submitted a brief; *Mr. Maury* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, *Mr. W. D. Kyle, Mr. R. F. Gaines,* and *Mr. J. A. Poore,* for Respondents, submitted a brief; *Mr. Nagle* and *Mr. Gaines* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The plaintiff, a Montana corporation and taxpayer, brought this action to enjoin the issuance and payment of warrants for fire insurance on the state capitol building, the buildings at the various educational and other state institutions. The plaintiff is engaged in the sale of fire insurance policies, and is the agent for a number of "non-board" fire insurance companies.

The various policies for fire insurance on all of the buildings, the property of the state, were about to expire on September 1, 1932. A meeting was held by the state board of examiners to consider the securing of policies of insurance on the above enumerated buildings. No call for bids was advertised by the board. The plaintiff, through its authorized representative, attended the meeting and offered in writing to furnish insurance on a substantial portion of the risks to be carried at a rate somewhat less than theretofore paid or thereafter agreed to be paid for such insurance. The board refused to accept the bid and proceeded to enter into contracts for insurance with other companies at a higher rate.

The legislative assembly in 1931 made two appropriations for the payment of fire insurance premiums on state buildings. One appropriation is found in the general appropriation bill for the expense of the government of the state of Montana.

Another is an appropriation from the university millage fund and is a part of the appropriation bill for the operation and maintenance of the various educational institutions, for the support of which this millage fund is levied and collected. It was the plan of the board of examiners at the time of the letting of the insurance to pay for the insurance on the buildings of the various units of the educational institutions from the latter appropriation, and to pay the insurance premiums on the state capitol and the other state institutions from the appropriation in the general appropriation bill.

It was proposed by the state board of examiners to secure policies of fire insurance for a period of three years from September 1, 1932, the payments to be made as indicated, with the exception that the amount appropriated from the millage fund was insufficient by approximately $6,000 with which to pay the costs of the insurance on the buildings to be insured from that fund.

The plaintiff by this action sought to prevent the payment for the various policies of fire insurance upon two general grounds: Namely, (1) that the various appropriation bills containing these appropriations were in contravention of certain constitutional provisions, hereinafter noted, and therefore void; (2) that the state board of examiners was without authority to let contracts for insurance unless they first advertised and received bids in accordance with certain statutory provisions.

On the filing of the complaint in the lower court a restraining order, and order to show cause, was issued in accordance with the prayer of the complaint. Answer was filed, and in due course a hearing had; thereafter the restraining order was dissolved and plaintiff's application for an injunction denied. The appeal is from the order dissolving the temporary restraining order and refusing further injunctive relief.

The plaintiff asserts that the titles to the appropriation bills are in violation of sections 23 and 33 of Article V of our Constitution. The title to House Bill 190 (Laws 1931, p. 574) is: "An Act to Appropriate Money for the Operation

and Maintenance, and Other Purposes, as Designated Herein, for Certain State Departments, Boards, Bureaus and Commissions for the Period Beginning July 1, 1931, and Ending June 30, 1933.''

It is apparent from the reading of the foregoing title as well as the bill itself that the bill was a general appropriation bill. Section 33 of Article V permits more than one subject to be included in a general appropriation bill, provided there is embraced ''nothing but appropriations for the ordinary expenses of the legislative, executive and judicial departments of the state. * * * '' The only question raised by plaintiff with reference to this particular bill is that fire insurance is not ordinary expenses of some one of the three co-ordinate departments of state government.

The insurance provided by this particular bill was on the state capitol and other state institutions, such as the penitentiary, insane asylum, etc. Ordinary expenses include the current expenses of the government. (*State ex rel. Branch* v. *Leaphart*, 11 S. C. 458; *In re Limitation of Taxation*, 3 S. D. 456, 54 N. W. 417.) The expense of salaries of officers and enlisted men of the national guard have been held to be ordinary expenses of the legislative, executive or judicial department within the meaning of a like constitutional provision. (*State ex rel. Davis* v. *Carter*, 31 Wyo. 401, 226 Pac. 690.) Appropriations for the support of a farmers' institute are said to be, although not within a narrow definition of the expenses of the state government, nevertheless fairly included in the title of a general appropriation Act, and are proper charges assumed in the definition of the legislative assembly as expenses of state government. (*Illinois Farmers' Institute* v. *Brady*, 267 Ill. 98, 107 N. E. 784.)

The insurance of buildings, the property of the state, is an expense that will occur from time to time if the state is to follow the same care and caution exercised by ordinarily prudent citizens in the conduct of their own affairs. Any expense which recurs from time to time and is to be reasonably anticipated as likely to occur in order for the proper operation

and maintenance of the departments of the state government is an ordinary expense. Fire insurance premiums are clearly of this nature. A general appropriation bill is not violative of the section of the Constitution complained of, containing appropriations to pay premiums on buildings determined by the legislative assembly to be necessary for the proper function of the governmental departments.

The other appropriation was contained in House Bill No. 222 ▮ (Laws 1931, p. 590), the title to which is as follows: "An Act to Appropriate Money for the Operation and Maintenance of the Six (6) Units of the University of Montana, for the Agricultural Experiment Stations and the Substations, for Farmers' Extension Work, for the Bureau of Mines, for the Students Railroad Fare Refund and for Fire Insurance Premiums on the Physical Plant of the University of Montana and Its Various Branches, for the Period Beginning July 1, 1931, and Ending June 30, 1933."

It is urged that this title is in violation of section 23 of Article V of the Constitution, prohibiting the inclusion of more than one subject which shall be clearly expressed in the title. In view of the fact that the title expressly mentions "Fire Insurance Premiums," the objection is narrowed to the question of whether or not the inclusion thereof renders the Act vulnerable by reason of containing two subjects. The purpose of the Act as disclosed by the title was to appropriate money for the operation and maintenance of six units of the University of Montana, and for fire insurance premiums on the physical plant of the University.

The purpose of the constitutional provision under consideration has frequently received the careful attention of this court. The rule announced is "that the unity required by this section is served notwithstanding the existence of many provisions in an Act where such provisions are germane to the general subject expressed." (*State ex rel. Bonner* v. *Dixon*, 59 Mont. 58, 195 Pac. 841, 847; *State ex rel. Hay* v. *Alderson*, 49 Mont. 387, 142 Pac. 210, Ann. Cas. 1916B, 39; see, also, *Reid* v. *Lincoln County*, 46 Mont. 31, 125 Pac. 429.)

In the title to this Act there is but one subject, namely, the operation and maintenance of the University and the experimental stations. In order to properly operate and maintain these various institutions it was essential that the buildings be insured. The expense was one necessary in the careful and proper operation and maintenance of them. The contention is without merit.

The argument is made by plaintiff that the contracts of ██ insurance being for three years, section 12 of Article XII of the Constitution is violated. It provides that "no appropriation of public moneys shall be made for a longer term than two years."

If this appropriation were to be held a continuing one, it would not be void *ab initio*, but the appropriation would remain valid until the expiration of the two-year period. (*Hill* v. *Rae*, 52 Mont. 378, 158 Pac. 826, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495.) However, our Constitution contains no prohibition against the making of contracts which are not to be performed within two years. In the absence of such a prohibition the legislature may authorize the making of a contract for a longer period, as our Constitution is a limitation on and not a grant of power. A contract to supply text-books for a period of six years is held not to be in violation of an identical constitutional provision. (*Charles Scribner's Sons* v. *Marrs*, 114 Tex. 11, 262 S. W. 722.)

The appropriation would expire in two years under the constitutional mandate; but, being valid during the biennium, insurance contracts for a term of three years and payments made therefor during that period from the funds so appropriated, would not violate this section of the Constitution.

Counsel for plaintiff assert that the board of examiners was ██ not authorized to let contracts for fire insurance unless it first advertised for proposals pursuant to the provisions of sections 256 and 257, Revised Codes of 1921. Counsel for both parties, both in oral argument and in their briefs, assert that the necessity for advertising turns solely upon the question of whether or not fire insurance comes within the meaning of the

term "supplies." The plaintiff asserts that fire insurance is included within the term, and the defendants assert the contrary. Neither party to this appeal questions the authority of the board to secure fire insurance policies on state buildings.

This court in the case of *New York Life Ins. Co.* v. *Deer Lodge County,* 43 Mont. 243, 115 Pac. 911, 912, in considering the nature of a policy of fire insurance, said: "The policies are simply contracts of indemnity against loss (by fire), entered into between the corporations and the assured, for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration."

The term "supplies" has not been held to include everything that is furnished to the state or a municipality. In the case of *White* v. *Moore,* 288 Pa. 411, 136 Atl. 218, coal for the use of a schoolhouse was held not to be included within the expression "school supplies." Again, in the case of *Milwaukee Electric Ry. Co.* v. *City of Milwaukee,* 173 Wis. 329, 181 N. W. 298, electric current furnished to the city was held not to be included within the term "supplies," in the statute requiring a contract that all supplies should be let after bids or proposals were received. In the case of *Gleason* v. *Dalton,* 28 App. Div. 555, 51 N. Y. Supp. 337, 338, it was proposed to secure an additional supply of water for the city of New York, and it was urged that it could only be obtained after the advertising for bids under a statute requiring such procedure. The court in its decision said: "It may be conceded that in a broad etymological sense the word 'supply' embraces anything which may be furnished to meet the need of any particular department of the city or its inhabitants. And yet it is manifest that the use of such word in public charters was

not intended to be construed in terms as broad as its etymological sense, and has been many times made to yield to incompatible conditions. Indeed, its enforcement at all times would fail in accomplishment of the purpose for which it was created.''

Courts may take judicial notice of the official acts of the ██ Governor of the state and other officers or boards. (23 C. J. 100.) It is a well-known fact that the board of examiners has for many years, during all of which time section 256, Revised Codes of 1921, has been a part of the laws of the state, proceeded to secure policies of fire insurance without advertising for or receiving competitive proposals for the furnishing of the same. It is true that courts have variously defined the term ''supplies,'' and some definitions are perhaps sufficiently broad to include fire insurance policies to be within the meaning of the word. The practical construction, however, of the statute as adopted by the various boards of examiners of the state over a long period of time has been to the effect that these policies are not within the meaning of the term.

It is the settled rule that the practical interpretation of an ██ ambiguous or uncertain statute by the executive department charged with its administration is entitled to the highest respect, and, if acted upon for a number of years, will not be disturbed except for very cogent reasons. (*State ex rel. Public Service Com.* v. *Brannon,* 86 Mont. 200, 283 Pac. 202, 67 A. L. R. 1020; see, also, 25 R. C. L. 1043.)

The contemporaneous and long-continued practice of officers ██ required to execute or take special cognizance of a statute is strong evidence of its true meaning. And if the legislature by its inaction has long sanctioned a certain construction, language apparently unambiguous may be given by the courts such construction, especially if the usage has been public and authoritative. (*Hilburn* v. *St. Paul, M. & M. Ry. Co.,* 23 Mont. 229, 58 Pac. 551, 811.) The last-mentioned rule is applied where for many years the construction insisted upon has been the rule of action and to disturb it would be to work

great public and private injury and inconvenience. (*Hilburn Case,* supra.)

The ambiguity existing in the term "supplies," as used in the statute, the practical construction excluding insurance policies from the term, as used in section 256, supra, and the sanction of the legislature to such interpretation by reason of its inaction, lead to the conclusion, and we hold, that fire insurance policies are not included within the term "supplies." It was, therefore, unnecessary to procure bids or proposals before entering into the contracts of insurance.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and STEWART concur.

MR. JUSTICE ANGSTMAN, Concurring in Part and Dissenting in Part:

I agree with what is said in the foregoing opinion with respect to the validity of the appropriations. I do not agree that contracts for the insurance of state-owned buildings can be let without advertising for proposals. I think the word "supplies" as used in section 256, Revised Codes 1921, was intended to embrace "anything which may be furnished to meet the need of any particular department" of the state government (*Gleason* v. *Dalton,* 28 App. Div. 555, 51 N. Y. Supp. 337, 338) and which entails the expenditure of state funds, and that it embraces policies of insurance on state property. If this were not so, then there is no authority in the board of examiners to enter into a contract for the insurance of state property in any manner. That section is the only one defining the authority of that board which could possibly embrace that of making contracts for insurance, and, if it does not include the making of such contracts, then the power does not exist in that board. I think that section is sufficiently broad to include the power of making such contracts.

The contemporaneous construction of the Act referred to in the majority opinion, in its last analysis was that the word

"supplies" as used in section 256 embraces policies of insurance, but that the same word in section 257 does not. Section 257, which requires the board to advertise for proposals "to furnish any and all the supplies mentioned in the next preceding section," is as broad and comprehensive as section 256, and if the one embraces state insurance, as I think it certainly must, so does the other.

If contemporaneous construction is properly to be resorted to, then it can go no further than to demonstrate persuasively that policies of state insurance are embraced within the term "supplies" as used in both sections. Practical construction cannot be resorted to as an excuse for overriding the statute requiring advertising for proposals for such contracts.

No contention is made here that sections 284–293, Revised Codes 1921, as amended by Chapter 66, Laws of 1923, and Chapter 17, Laws of 1925, creating the state purchasing department and defining the duties of the state purchasing agent, have worked an implied repeal of sections 256 and 257, and I pass that question.

Rehearing denied March 29, 1933.