McBRIDE, Plaintiff, v. REARDON, State Superintendent
of Public Instruction, et al., Defendants.

(No. 7,713.)

(Submitted June 25, 1937.   Decided June 30, 1937.)

[69 Pac. (2d) 975.]

*Mr. S. C. Ford* and *Mr. Sam D. Goza,* for Plaintiff, submitted a brief; *Mr. Ford* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General; *Mr. Mark H. Derr,* Assistant Attorney General, and *Mr. Leo C. L. Graybill,* for Defendants, submitted a brief; *Mr. Derr* and *Mr. Graybill* argued the cause orally.

MR. JUSTICE ANGSTMAN, delivered the opinion of the court.

This is an original proceeding by plaintiff, a resident taxpayer, to enjoin the distribution of moneys from the State Public School General Fund.

. The plaintiff challenges the threatened distribution as being contrary to sections 1200.1 et seq., Revised Codes. The gist of his complaint is that the county superintendents of the several counties in the state, in making the certificate to the state superintendent of public instruction under section 1200.6 have arbitrarily certified the number of pupils actually attending a public school in their respective counties and residing three or more miles from school, without reference to and in disregard of the actual cost of transportation; that unless restrained from so doing, the state superintendent of public instruction, acting under section 1200.7, will compute the amount of apportionment and contribution of the state on the basis of the figures so certified, without regard to the actual cost of transportation to the several counties, and will so certify to the state treasurer, who, in turn, will pay the money to the several county treasurers as required by section 1200.9.

In addition to the general charge made against all county superintendents, plaintiff makes a specific charge against the county superintendent of Cascade county, and as to her, in ad-

dition to the foregoing, alleges: "That numerous pupils so certified by the defendant Holland as actually attending school in said county and residing more than three miles therefrom and receiving transportation at the expense of said county are in truth and in fact furnished transportation by parents or others at no cost or expense to school districts within said county, and other of said pupils do not in fact attend a public school."

. Plaintiff further alleges that the county superintendent of Cascade county "will allocate said sum to the various school districts of the county upon the basis of the number of pupils of school age residing three miles or more from a public school within said districts and will allocate to school districts sums of money as the contribution of the State of Montana, when such districts had and have no transportation cost or expense, and will allocate sums of money as transportation costs to parents of pupils residing three miles or more from a public school when such pupils have been transported without expense to such school district."

Plaintiff's view of the meaning of section 1200.1 is set forth in the complaint as follows: "That under the provisions of section 1200.1, the State of Montana may contribute to the actual cost of the transportation of pupils not to exceed one-half of the amount fixed in the schedule promulgated by the State Board of Education, and in the event that the cost is less than the amount fixed in the uniform schedule of transportation, then and in that event the State of Montana may contribute only one-half of such actual cost; that under the statutes of the State of Montana, the county superintendent of schools of Cascade county is required to certify only the number of pupils actually transported to public schools by Cascade county and the actual cost of such transportation to said county; and the defendant Superintendent of Public Instruction is by law required to certify to the Treasurer of the State of Montana, the contribution of the State of Montana based upon the actual cost of the transportation, and in no event to exceed one-half of the amount fixed in the schedule promulgated by the State Board of Education, and not more than one-half of such cost in the event that the actual

cost of such transportation is less than the amount fixed under the transportation schedule promulgated by the State Board of Education.''

Whether plaintiff is entitled to prevail, and, if so, to what extent, depends upon the construction to be placed upon the statutes involved. Our attention has been called to sections 1010 et seq., and to sections 1262.1 et seq., and other statutes relating to the transportation of school children. Those statutes have to do with the powers and duties of the trustees of a school district and furnish little, if any, aid in interpreting Chapter 175, Laws of 1935, now sections 1200.1 to 1200.9, Revised Codes. We believe proper construction of Chapter 175 will determine all the issues here involved. The pertinent parts of that chapter are the following:

Section 1200.1 provides in part: ''A uniform system of free, public schools, sufficient for the education of, and open to, all the children of the state, of school age, shall be established and maintained throughout the state of Montana; and to carry on and support a minimum, foundational, educational program therein, the state of Montana shall provide therefor, and contribute thereto, revenue upon the following schedule: * * * (c) For the transportation of pupils, one-half of the cost of such transportation for all pupils, residing three or more miles distant from a public school; but the state board of education of the state of Montana shall fix and promulgate a uniform schedule of rates for the transportation of pupils to and from the public schools of the state, and upon the bases of such schedules, so fixed, the contribution of the state to the cost of transportation shall be computed, and the payment thereof made, and in no other way.''

Section 1200.6 in part provides: ''Not later than July 15th of every year the county superintendent of schools of every county shall * * * certify to the state superintendent of public instruction the number of pupils, actually attending a public school in his county and residing three or more miles distant therefrom, and the actual cost of the transportation of such pupils pursuant to the schedule of rates fixed and promul-

gated by the state board of education, and such other facts and information as the state superintendent or the state board of education may require in connection therewith.''

Section 1200.7 provides: ''Not later than August 15th of every year, and upon the basis of the facts certified to him by the several county superintendents of schools in accordance herewith, the state superintendent of public instruction shall compute, under section 1200.1 and the schedules fixed by the state board of education, the amount of the contribution by the state to the cost of the transportation of the pupils in the public schools of the several counties, and shall forthwith certify such amounts to the treasurer of the state of Montana for payment.''

Section 1200.9 requires the state treasurer on the first days of February and August of each year to pay from the State Public School General Fund the several amounts ''due the counties of the state for the transportation of pupils, as certified to him hereunder by the state superintendent of public instruction.''

The contention that the schedule of rates fixed by the state board of education under section 1200.1 constitutes the maximum rates only cannot be sustained. The legislative intent is plain that the schedule of rates fixed by the State Board of of Education under section 1200.1 shall be uniform throughout the state. Actual cost in fact was eliminated by the provision that the State Board of Education shall fix a uniform schedule of rates, together with the provision in the act that upon the bases of such schedule so fixed, the contribution of the state shall be computed, ''and in no other way.''

The use of the word ''bases'' or the phrase ''upon the bases of such schedules, so fixed, the contribution of the state * * * shall be computed,'' in section 1200.1, when considered with the other provisions of the Act, does not require a different interpretation from what we have placed upon it. In other words, treating the schedule as a schedule of definite and fixed, uniform rates, there still must be computations made in arriving at the amount of the contribution of the state, for under the schedule adopted the rate varies with the distance the pupils reside from

the schools and with the number of pupils transported these varying distances.

Our construction of section 1200.1 is not out of harmony with the principles announced in *State ex rel. Snidow* v. *State Board of Equalization,* 93 Mont. 19, 17 Pac. (2d) 68.

The schedule fixed by the state board is as follows:

"Transportation Schedule Adopted by the State Board of Education, April 12, 1937.

"Schedule 1 E & 1 H.

| Mi. | 1 child | 2 children | 3 children | 4 and over |
|-----|---------|------------|------------|------------|
| 3   |         |            |            |            |
| 4   |         |            |            |            |
| 5   |         |            |            |            |
| 6   | .30     | .35        | .40        | .45        |
| 7   |         |            |            |            |
| 8   |         |            |            |            |
| 9   |         |            |            |            |
| 10  |         |            |            |            |
| 11  | .35     | .40        | .45        | .50        |
| 12  |         |            |            |            |
| 13  |         |            |            |            |
| 14  |         |            |            |            |
| 15  |         |            |            |            |
| 16  |         |            |            |            |
| 17  | .40     | .50        | .60        | .70        |
| 18  |         |            |            |            |
| 19  |         |            |            |            |
| 20  |         |            |            |            |
| etc.| .45     | .55        | .65        | .75        |

Estimate of maximum reimbursement under schedule for entire state

27,494 x $.27—$7,423.38

$7,423.38 x 180—$1,336,208.40—334

$1,336,208.40÷2—$668,104.20.

Explanation

27,494—Number of children paid transportation in 1935–36.

27 cents—Estimate of average per capita distribution under Schedule 1 E and 1 H.

180—Number of school days in year.

$1,336,208.40—Estimated total expenditure for districts & state

$668,104.20—Estimated state reimbursement to districts.

Note: Elementary and high school students will be considered separately in applying the above schedule. See Example.

Example of the Operation of Schedule 1 E and 1 H.

One family has 2 children in the elementary school and 2 in high school. The family lives five (5) miles from the elementary school and ten (10) miles from the nearest high school.

The maximum reimbursement possible for the two elementary children traveling five miles would be one-half of 35 cents or 17½ cents per day for both children.

The maximum reimbursement possible for the two high school children traveling 10 miles would be one-half of 40 cents, or 20 cents per day for both children attending high school.

The total possible reimbursement to the district for the four children of the family would be 37½ cents per day.

Note: Schedule adopted to be used as basis of payment for entire year of 1936–1937, making necessary adjustments taking into consideration first payment already made.''

There is language in the example that on first reading might be construed as indicating a purpose to fix maximum rates. However, since the law does not provide for maximum rates but for uniform rates, we must construe the schedule as in fact fixing a definite uniform rate, if that is possible in order to uphold it. This we may do without doing violence to the wording of the schedule.

The example accompanying the schedule deals with a family. In case the children of two or more families are transported to and from the same place, the rates then become lower for each pupil than in the example given. In such a situation, and to that extent only, does the schedule provide the maximum reimbursement. Nor do we think it is important that the county or the school district in some instances does not transport some of the children, but that it is done by the parents or others.

While there is language in section 1200.9 that indicates that the state's contribution is to the counties for amounts due them for transportation costs, yet, when the act is considered as a whole, we think it discloses the legislative purpose to require the state to make the contribution without reference to the actual cost of transportation, and even though the counties or the school district did not in fact assume the obligation of transporting the children. So long as the schedule fixed by the state board of education bears reasonable relationship to the actual cost of transportation, it fixes and determines the rate. There is no charge made here that this schedule is not a fair and reasonable one; nor is it contended that the state board of education acted arbitrarily in fixing the schedule, or that it is out of proportion to the actual transportation cost. The Act was construed by the Attorney General in 1935 as we have here construed it (vol. 16, Attorney General Reports, p. 135), and the legislature, though meeting since, did not see fit to make any change. This is at least persuasive that it was satisfied with that interpretation.

The allegation in the complaint to the effect that the county superintendent of Cascade county included children in her report who do not attend the public schools is denied and the allegation was not sustained by proof.

The charge was also made that the State Superintendent of Public Instruction threatens to compute the amount of the state's contribution based solely upon the number of children certified by the county superintendents, and without reference to the distance that they are transported. This is denied in the answer, but, owing to certain admissions in the answer, the matter is left somewhat in doubt. The proper computation to be made by the state superintendent must be based upon all of the elements of the schedule fixed by the State Board of Education. It is not proper to make distribution of the money solely on the number of children transported in each district, but there must also be considered the distance they are transported, and, also, elementary and high school transportation must be computed

separately. In other words, a district transporting fifteen children ten miles is entitled to more than a district transporting fifteen children five miles. If the state superintendent requires additional information from the county superintendents in order to make the necessary computation in conformity with this opinion, that officer has the right to request it under section 1200.6.

Let an appropriate writ issue in accordance with the views expressed in this opinion.

Mr. Chief Justice Sands and Associate Justices Stewart, Anderson and Morris concur.

---

## On Motion for Rehearing.

### Opinion: PER CURIAM.

On motion for rehearing, plaintiff contends that the opinion as promulgated fails to give consideration to the provisions of the statute wherein it it provided that the state's contribution shall be "one half of the cost of such transportation." This contention it without merit.

What the legislature intended was that the "actual cost of transportation" should be computed according to a uniform schedule of rates promulgated by the state board of education. This much it stated in clear and unequivocal language by saying that "upon the bases of such schedules, so fixed, the contribution of the state to the cost of transportation shall be computed, and the payment thereof made, and in no other way." (Sec. 1200.1, Rev. Codes.) If actual cost of transportation were intended to be the criterion by which to determine the state's contribution, then the county superintendent would undoubtedly have been the one named in the statute to make the computation. But the legislature imposed the duty upon the state superintendent to make the computation, and this upon the "basis of the facts certified to him by the several county superintendents of schools in accordance herewith, * * * under section

1200.1 and the schedules fixed by the state board of education."
(Sec. 1200.7, Id.) The duty imposed upon the county superintendent by the statute is not to certify the actual cost of transportation, but rather "the number of pupils, actually attending a public school in his county and residing three or more miles distant therefrom, and the actual cost of the transportation of such pupils *pursuant- to the schedule of rates fixed and promul-gated by the state board of education."* (Sec. 1200.6, Id.)

The statute, considered as a whole, makes it plain that the cost of transportation and the state's contribution therefor shall be computed in accordance with the schedule of rates fixed by the State Board of Education. Furthermore, if the actual cost of transportation was intended to be the test, then there could be no semblance of uniformity as the statute commands, for it is common knowledge that the actual cost of transportation for the same distance varies greatly in different parts of the state. In effect, the legislature said that the contribution shall be one-half of the actual cost of transportation, but we leave the question to the State Board of Education to fix the rates upon which the actual cost shall be computed. In other words, the legislature fixed the yardstick by which the cost of transportation shall be computed, viz., by the schedule of uniform rates fixed by the State Board of Education.

Further consideration of this question but convinces us of the correctness of the conclusion reached in our opinion herein, and the motion for rehearing is accordingly denied.