No. 87-380

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

ELLEN CORNWALL, HERBERT JONES,
and DONN PENNELL, et al.,

        Plaintiffs and Respondents,

   -vs-

THE STATE OF MONTANA, acting by and
through the DEPARTMENT OF JUSTICE, THE
LAW ENFORCEMENT ACADEMY BUREAU, et al.,

        Defendants and Appellants.

---

APPEAL FROM:  District Court of the Tenth Judicial District,
             In and for the County of Fergus,
             The Honorable Peter Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Mike Greely, Attorney General, Helena, Montana
        Clay Smith argued, Asst Atty General, Helena, Montana

    For Respondent:

        Thomas P. Meissner argued, Lewistown, Montana

---

Submitted:  December 3, 1987

Decided:  March 8, 1988

Filed MAR 8 - 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The Lewistown Montana Law Enforcement Academy Committee, chiefly Ellen Cornwall, Herbert Jones and Donn Pennell, brought an action for declaratory judgment in the District Court, Tenth Judicial District, County of Fergus, against officials and employees of the State of Montana, chiefly Mike Greely, as Attorney General and the head of the Department of Justice. The Committee applied for and obtained from the District Court a preliminary injunction pendente lite enjoining and restraining the defendants in legal effect from taking any step for the purchase or lease of modular buildings or facilities currently being used by the Montana Law Enforcement Academy in Gallatin County, Montana.

For ease of reference, we will denote the plaintiffs collectively as the Committee and the defendants collectively as the Attorney General.

The Attorney General appeals the issuance of the preliminary injunction pendente lite to this court. On consideration and examination of the law and applicable statutes, we order that the preliminary injunction be dissolved.

This case involves the interrelation of statutes which provide for the procurement of real and personal property for the operation of state government; it also involves the jumble of conflict which arose when the legislature provided separately for the procurement of property for the Montana Law Enforcement Academy. It is in threading through the jumble that we determine that the preliminary injunction must be dissolved.

Statutory authority for the establishment of the Montana Law Enforcement Academy was enacted in 1959 (Ch. 7, Laws of Montana (1959)). In general, the Academy was to be governed by the Department of Justice (§ 44-10-201, MCA) and with respect to the location of the Academy, two provisions of the original enactment are important:

44-10-202. Powers and duties of department. The Department of Justice shall have the power and it shall be its duty to:

(1) Choose a site for the Montana Law Enforcement Academy at the unit of the university system of Montana which in the determination of the department is best suited for the needs of the academy.

. . .

(10) Do all other things necessary and desirable for the establishment and operation of the academy not inconsistent with this chapter or the constitution and statutes of the State of Montana;. . .

The original location chosen for the Academy was on the campus of the Montana State University at Bozeman. In 1977, the Montana Board of Regents stated that the Academy must be relocated due to the need for space on the campus occasioned by a substantial increase in the student population. In July, 1978, the Attorney General, on behalf of the State, entered into two agreements which in effect continued the location of the academy in Bozeman.

On July 27, 1978, Donald Cape and Jo Ann Cape entered into an option agreement with the Attorney General, granting to the Attorney General, on or before September 1, 1988, the right to purchase certain listed personal property for the purchase price of $442,500.00. Upon the exercise of the option by the Attorney General, the option price would be reduced by the amount of principal and interest payments made

by the Capes on the indebtedness incurred by them to acquire and fund the personal property subject to the option. The resulting figure would be the purchase figure for the exercise of the option. The personal property consisted essentially of the modular buildings and facilities and equipment utilized for the operation of the Academy.

A day later, on July 28, 1978, Donald Cape and Jo Ann Cape entered into a lease agreement with the Attorney General whereby the Capes leased to the state for a term of 10 years ending on September 31, 1988, the same modular buildings and equipment as the personal property listed in the option. The lease provided for an annual rent of $107,000.00, payable quarter-annually, escalated by certain factors, including inflation, as contained in the lease. The lease provides that the state occupancy is for the purpose of the Law Enforcement Academy.

Under the option agreement, the Attorney General exercised the option to purchase the personal property on June 30, 1987, when the Attorney General notified the Capes in writing to that effect. Disagreement as to the exact option price exists. As of July 1, 1987, the Attorney General determined the option purchase price to be $80,745.62, while the Capes determined the purchase price to be $295,032.63. No money as yet has been transferred to complete the option.

Long Range Building Program

Through all of the foregoing history of the dealings by the Attorney General with Don and Jo Ann Cape, there have been in effect statutes pertaining to the long range building program of the state. Section 17-7-201, et seq., MCA. Generally those provisions require each state agency and institution to submit to the Department of Administration its proposed long range building projects with enough information

on which the legislature can act and set a budget. Further, the governor, in submitting his budget to the legislature, must report the requests of the state agencies for long range proposed building programs together with his recommendations for the construction of buildings during the forthcoming biennium. Section 17-7-203, MCA. Since 1975, the governor must recommend to the legislature priorities for proposed buildings. Section 17-7-204, MCA.

There is, however, no provision in the chapter regarding long range building programs making the process therein exclusive as to the acquisition of property for the operation of state government. In the case of the Academy, each year since 1978, the legislature has appropriated, and the legislative auditor has consented to, the monies necessary to keep the state current on its personal property lease with the Capes. In the light of statutory construction, we find no conflict therefore between the long range building program and the lease-option arrangement for the acquisition of personal property from the Capes, since the long range building statutes are not exclusive.

Duties of the Department of Administration

In this state, we have a Department of Administration, whose department head is appointed by the governor (§ 2-15-1001(1), MCA). The head is also ex officio the state treasurer (§ 2-15-1002, MCA). Among the duties assigned to the Department of Administration is the management of real property and buildings used by state agencies. Except for the university system, "no state agency shall lease, rent or purchase property for quarters without prior approval of the Department" [of Administration]. Section 2-17-101(1), MCA.

The Department of Administration is further given the authority, as part of the long range building program, to enter into rental contracts which provide an option to

purchase the leased building used by the state or any department of state government. Section 18-3-101, MCA. There are certain limitations to such lease-option agreements. They must first be authorized by a vote of two-thirds of the members of each house of the legislature; the plans and specifications are to be drawn by an architect appointed by the Department of Administration; there is a required bidding procedure for the awarding of the contract (§ 18-3-103, MCA), the contracts cannot exceed 20 years and the option to purchase cannot exceed $50,000.00. Location of the building is determined by the call for bids. Section 18-3-105, MCA.

In this case, the Committee contends that the lease and separate option agreement entered into by the Attorney General with the Capes should have been governed by the provisions of § 18-3-101, et seq., pertaining to lease-option agreements. The Attorney General contends on the other hand that since the instruments are separate, the provisions for lease-option in those statutes do not apply.

We see no merit in the Attorney General's contention that this is not a lease-option agreement simply because the instruments are separate. Undoubtedly, the lease payments made by the State under the lease agreement in this case were utilized by the Capes to make the underlying funding payments required when the Capes borrowed to furnish the property subject to the option. What is always important in this case, however, is that the provisions of § 44-10-202, MCA, in effect at the time of the dealings with the Capes, specifically gave the Attorney General the power to choose the site for the Academy at a unit of the University System of Montana, and in addition, to do all of the things necessary and desirable for the establishment and operation of the Academy not inconsistent with state statutes. Under

- 6 -

widely accepted rules of statutory construction that specific provisions control the general provisions, the specific authority given to the Attorney General in § 44-10-202, MCA, overrides the limitations placed upon lease-option contracts contained in § 18-3-101, et seq., MCA.

Amendment of § 44-10-202, MCA

The complicating factor in this case is that in 1985, the legislature amended § 44-10-202 in Ch. 431, Laws of Montana (1985). The title of the act states that it is "removing the requirement that the Montana Law Enforcement Academy be located at one of the units in the Montana University System." Whatever its purpose, the amendment not only took away the requirement for the location of the Academy at a university unit, but it also stripped the Department of Justice of the power to choose the site for the Montana Law Enforcement Academy. This provision was eliminated from § 44-10-202, in its entirety:

> (1) Choose the site for the Montana Law Enforcement Academy at the unit of the university system of Montana, which in the determination of the department is best suited for the needs of the Academy.

The amendment, however, left in effect the provisions of subparagraph (10) of the section which empowered the Department of Justice to "do all other things necessary and desirable for the establishment and operation of the Academy" not inconsistent with other statutory provisions.

For the purposes of this case, the net effect of the 1985 amendment of § 44-10-202, MCA, is to require that the Attorney General [Department of Justice] must now have the approval of the Department of Administration before he can lease, rent or purchase property for quarters under § 2-17-101(1), MCA.

## 1987 Budget Amendment

A final complicating factor in this case is the budgetary direction of the 1987 legislature. In the 1987 General Appropriations Act, the legislature directed:

> The Department [of Justice] shall purchase the modular facilities in Bozeman that currently house the Montana Law Enforcement Academy. For the purpose of purchasing such facilities, the Department is authorized to expend funds appropriated in item 10(a).

Item 10(a) provides a total of $622,291.00.

The 1987 budgetary direction is, of course, in conflict with the provisions of § 2-17-101, MCA, which require the approval of the Department of Administration, and with § 17-7-201, MCA, et seq. pertaining to the long-range building program. Nevertheless, the 1987 budgetary direction is on equal footing with the other statutes, and is a recognition by the legislature of the terms of the lease and option agreements entered into by the state with the Capes. Again, the statutory construction rule that the specific controls the general applies.

## The Preliminary Injunction

The District Court, in issuing the preliminary injunction, made findings of fact pertaining to the cause. It noted the execution of the option agreement and the subsequent lease agreement with the Capes; it noted that more than 20 proposals for the location of the Academy have been submitted by various communities in Montana, including one submitted by the residents of Fergus County, of which group the plaintiffs were members; it noted the 1987 budgetary direction to purchase the modular facilities; and then it made certain conclusions of law.

In its conclusions, the District Court determined that the committee had met the threshhold standard of § 27-19-201,

- 8 -

MCA, in that it had made a prima facie case of irreparable injury; it determined that the attempted exercise of the option to purchase the personal property from the Capes was void under § 2-17-101, MCA, without the approval of the Department of Administration; it determined that the option agreement and the lease agreement were in effect a single document and subject to the lease-option statutes in §§ 18-3-101, MCA, et seq. It held the lease agreement and the option agreement with the Capes to be null and void because the provisions of § 18-3-101, MCA, et seq. were not complied with; and it found the budgetary direction on the 1987 General Appropriations Act violated the provisions of Art. V, § 11(4) of the state constitution as an act of special or local legislation.

Thereafter, in a separate instrument, the court issued its preliminary injunction on July 17, 1987, restraining the defendants from entering into any discussions, consultations or negotiations for the purchase or release of modular buildings or facilities; from executing, signing or entering into any oral or written agreement for the purchase or release of those modular buildings or facilities; from exercising any option to purchase the personal property described in the option agreement or from seeking to accomplish payment of any sum for the purchase of those facilities; and from exercising any option to renew or extend the lease of personal property from the Capes. No bond is required of the plaintiffs.

On appeal, the Attorney General contends that the issuance of the preliminary injunction was improper, that the injunction was overbroad, and that the District Court erred by not requiring a written undertaking pursuant to § 27-19-306(1), MCA.

Although there are conflicts in the statutes pertaining to the Academy, the rules of statutory construction lead us to conclude that insofar as the statutes are concerned, the Attorney General had the authority in 1978 to select the site for the Academy and to enter into the lease and option. By statute, we are required in the construction of statutes, to pursue the intention of the legislature where possible, and we are commanded that when general and particular statutory provisions are inconsistent, the particular provisions are paramount, so that a particular intent governs a general one that is inconsistent with it. Section 1-2-102, MCA. The cases are legion upholding this statutory requirement. The lapse of 9 years time under the lease, during which time the legislature appropriated monies for the continuation of the lease, and the 1987 budgetary direction to purchase the modular facilities are all solid evidence of the intention of the legislature in the matter. Section 1-2-102, MCA. Executive constructions of a law, acquiesced in by the legislature are not binding on the court, but are persuasive and will be upheld if not erroneous. State ex rel. Ebel v. Schye (1957), 130 Mont. 537, 541, 305 P.2d 350, 353; McBride v. Reardon (1937), 105 Mont. 96, 103, 69 P.2d 975, 979; Miller Insurance Agency v. Porter (1933), 93 Mont. 567, 575, 20 P.2d 643, 646.

The 1987 budgetary direction to the Department of Justice to purchase the modular facilities is on the same footing as other statutes of the state and is further indication of the intent of the legislature.

The case for the respondents must ride or fall on whether the provisions of Art. V, § 11(4), render the 1987 budgetary direction unconstitutional. The pertinent provisions of the state constitution are found in Art. V, as these:

Section 11 . . . (4) A general appropriation bill shall contain only appropriations for the ordinary expenses of the legislative, executive and judicial branches, for interest on the public debt, and for public schools. Every other appropriation shall be made by a separate bill, containing but one subject.

Section 12. Local and special legislation. The legislature shall not pass a special or local act when a general act is, or can be made, applicable.

The District Court determined that each of the foregoing constitutional provisions were offended in this cause (1) because the 1987 budgetary provision was not for an "ordinary expense" and (2) because the budgetary direction is a special or local act. The Committee contends that Miller Insurance Agency v. Porter, supra, applies here, in determining whether the purchase of the modular facilities is an "ordinary expense." In Miller, we defined such expenses as:

Any expense which recurs from time to time and is to be reasonably anticipated as likely to occur in order for the proper operation and maintenance of the departments of the state government is an ordinary expense.

93 Mont. at 571, 20 P.2d at 645. We find the citation inapplicable here, however, because under the terms of the lease, the expense of purchase is certain to occur during the biennium and none can doubt the power of the legislature to make provision for biennial expenses through appropriations, whether those expenses are incurred through purchase or by lease.

We also determine that the budgetary direction of 1987 does not offend Art. V, § 12, of the Montana Constitution. As a part of the General Appropriation Act pertaining to the operation of state governments, the direction to purchase was regarded by the legislature as an expense to be incurred in

- 11 -

the coming biennium. The legislature could have set out the budgetary direction in a separate statute or law instead of including it in the general law, but that problem is "broadly speaking for the legislative assembly alone." Arps v. State Highway Commission (1931), 90 Mont. 152, 165, 300 P. 549, 554; and State ex rel. Fisher v. School District No. 1 (1934), 97 Mont. 358, 367, 34 P.2d 522, 526 "if the applicability of a general law depends upon extrinsic facts and circumstances, the question of applicability is referable to the legislature and with its determination the courts will not interfere."

We determine, therefore that the 1987 budgetary direction does not offend the state constitution as either a special or local act or as an appropriation beyond an ordinary expense.

We therefore determine that the Committee has failed to meet the standards required for the issuance of a preliminary injunction under § 27-19-201, MCA. Accordingly, we reverse the District Court in the issuance of a preliminary injunction, and order that the said preliminary injunction be and the same is hereby dissolved. Remittitur in this cause shall issue forthwith. The Clerk of this Court is instructed to notify counsel of record forthwith by telephonic notice and to serve copies on said counsel by ordinary mail in due course of this opinion, which shall have the force and effect, without further order, of the office of such an order dissolving the preliminary injunction. The cause is remanded to the District Court with instructions to dismiss the same.

John C. Sheehy
_____
Justice

We Concur:

- 12 -

_____
        Chief Justice

_____
John Conway Harrison

_____

_____

_____
William E. Hunt Sr.

_____
        Justices

- 13 -