# Richmond.

## HOLMES L. GRUBER v. COMMONWEALTH.

1. MOTOR VEHICLE CARRIERS—*Certificate of State Corporation Commission—Evidence to Sustain a Finding that Applicant was not Operating in Good Faith on February 28, 1923.*—On the question of whether the applicant for a certificate from the State Corporation Commission to operate a motor vehicle was operating, in good faith, on February 28, 1923, over the route in question, the evidence was in direct conflict. But there was evidence to the effect that the motor vehicle, which applicant was driving on February 28, 1923, was, and for some time prior and after that date, operated under a license issued by a city to another; that the bond required to be given by the city ordinance was given in the name of such other, and that the State license for 1922 was issued to such other.

   *Held:* That the evidence supported the finding of the Commission that the applicant was not operating on February 28, 1923, over the route in question, as the inference was that the applicant was a mere servant of the person to whom the license was issued.

2. MOTOR VEHICLES—*Carriers—Operation on February 28, 1923—Question of Fact to be Determined by State Corporation Commission—Weight of Finding of Commission on Appeal.*—Acts of 1923, chapter 161, page 195, section 3, known as the motor vehicle carrier act, provides that a certificate of right shall be granted to an applicant when it appears to the satisfaction of the Commission that the applicant was actually operating in good faith over the route in question on February 28, 1923. The weight to be given to the evidence on the question of whether the applicant was so operating on February 28, 1923, where it is in conflict, is solely for the Commission to determine, and the Supreme Court of Appeals has no jurisdiction to disturb the finding of fact of the Commission, unless such finding is plainly wrong or without any sufficient evidence to support it.

3. MOTOR VEHICLE CARRIERS—*Constitutionality of Act—Guaranty to the Citizen of His Liberty, Privileges, and the Equal Protection of the Laws.*—The motor vehicle carrier act, Acts of 1923, page 195, *et seq.*, chapter 161, section 3, is not invalid because in conflict with State and Federal constitutional guaranties to every citizen of his liberty, privileges, and the equal protection of the laws.

4. MOTOR VEHICLE CARRIER ACT—*Constitutionality of Act—Streets and Highways—Right of Citizen to Use Public Highways—Use of Highways by Common Carrier.*—Notwithstanding the State and Federal constitutional guaranties to every citizen of his liberty, his privileges, and the equal protection of the laws, no private individual, firm, or corporation has any right to use the public highways in the prosecution of the business of a common carrier for hire without the consent of the State; such consent may be altogether withheld, or granted as a privilege upon such terms and conditions as the State may prescribe in the exercise of its police power; and in such exercise of the police power there may be limitations and conditions, and thereby discriminations made between those to whom the privilege is granted and denied, provided the discriminations are based on some reasonable classification, which is not purely arbitrary, does not disclose personal favoritism or prejudice, and is fair and just.

5. COMMON CARRIERS—*Use of the Highways—Limitation by State.*—If the State were obliged to allow every one who may desire to do so to use the public highways as a common carrier, subject only to such general restrictions as shall apply to all alike, as, for example, that each may use only a certain number of vehicles, even if the number allowed to each be reduced to one, it is obvious that such carriers may in time greatly interfere with the reasonable use of some of the improved public highways by the general public.

6. MOTOR VEHICLE CARRIERS—*Classification—Persons Operating in Good Faith on February 28, 1923.*—The discrimination, consisting of the classification in the statute (Acts of 1923, page 195), which confers upon motor vehicle carriers who were actually operating in good faith over particular routes on the 28th day of February, 1923, is manifestly based on the legislative decision that the number of such carriers operating and the volume of the traffic thus occasioned at that time was only such as had been brought about by the then existing demand of public convenience and necessity, and hence was then required thereby, and that such number of such carriers and volume of traffic occasioned by them would not in the future unduly crowd the improved highways anywhere in the State to the detriment of the public welfare. And this was a matter of common knowledge in view of the history of road improvement and road legislation of the State; and, therefore, it was not only fair that the legislature should not put out of business motor vehicle carriers operating on the 28th day of February, 1923, but it would have been illogical for the legislature to end or curtail such business as it existed on that date; and permitting such carriers to continue in business involved nothing purely arbitrary or of personal favoritism or prejudice.

7. MOTOR VEHICLE CARRIERS—*Operating on February 28, 1923—Constitutionality of Act—Additional Carriers.*—As to other additional motor

· vehicle carriers, who might desire also to use the improved public highways, who were not in the business on February 28, 1923, the statute (Acts of 1923, page 195) provides that they should be granted or refused the privilege as the public convenience and necessity might thereafter require, as ascertained by the Commission in conformity with the other provisions of section 3 of the statute. This discrimination also, consisting of classifications which are not arbitrary but reasonable, being based on the requirements of the public convenience and necessity, are plainly not in conflict with the constitutional provisions guaranteeing to the citizen his liberty, privileges, and equal protection of the laws, and constitute valid legislation in the exercise of the police power of the State.

8. MOTOR VEHICLE CARRIERS—*Transportation Company—Public Service Corporation—Definition in Acts of 1923, page 195—Definition in Section 153 of the Constitution of 1902.*—Acts of 1923, page 195, section 2, defining motor vehicle carriers, is not in conflict with section 153 of the Constitution of 1902, defining "a public service corporation" and "a transportation company," as the definitions contained in section 153 of the Constitution of 1902 are merely of the terms as used in article 12 of the Constitution, which article does not deal with motor vehicle carriers. The exercise of the police power of the State on the latter subject was left dormant by the Constitution, and, therefore, might be exercised whenever the legislature chose, and the declaration of the statute, Acts of 1923, page 195, that every motor vehicle carrier as therein defined is a transportation company and a public service corporation is valid.

9. MOTOR VEHICLE CARRIER ACT—*Constitutionality—Local, Special, or Private Laws.*—The motor vehicle carrier act, Acts of 1923, page 195, *et seq.*, is a general law and not a "local, special, or private law" forbidden by the Constitution of 1902, sections 63 and 64.

Appeal from an order of the State Corporation Commission.

*Affirmed.*

This is an appeal by Holmes L. Gruber (hereinafter called applicant), from the original order of the State Corporation Commission (hereinafter called the Commission), entered on July 24, 1923, and from the subsequent order of the Commission, entered August 1, 1923, on a rehearing upon the application, which denied to the applicant the certificate of public con-

venience and necessity for the operation by him, as a common carrier, of a motor vehicle, or bus line, with one vehicle, over the route (which is an improved public highway of the State) between Winchester and Harrisonburg, on the ground, as stated in the orders, that it appeared to the Commission from the evidence before it "that said applicant was not operating over this route, in good faith, on February 28, 1923." The certificate mentioned is such as is required by the statute, section 5, chapter 161, Acts of 1923, page 195, *et seq.*, which went into effect on June 28, 1923, and is known as the motor vehicle carrier act.

So far as material to be stated, the said statute provides as follows:

"2. No corporation or person    *    *    shall operate any motor propelled vehicle as hereinafter defined for the transportation of persons or property for compensation on any improved highway of this State, except in accordance with the provisions of this act, and every motor vehicle carrier, as hereinafter defined, is hereby declared to be a common carrier, a transportation company and a public service corporation within the meaning of the laws of this State, and as such subject to the control, supervision and regulation of the Commission in the manner provided by law, but no such motor vehicle carrier shall be deemed to possess the power of eminent domain,    *    *.

"3. No motor vehicle carrier shall hereafter operate for the transportation of persons or property for compensation on any improved public highway without first having obtained from the Commission, under the provisions of this act, a certificate declaring that the public convenience and necessity require such operation; but a certificate shall be granted as a matter of right when it appears to the satisfaction of the Commission that

such person, firm or corporation was actually operating, in good faith, over the route for which such certificate shall be sought, on the twenty-eighth day of February, nineteen hundred and twenty-three.    *    *."

3a. The same section of the statute continues as follows: "The Commission shall have power to grant a certificate after hearing when the applicant requires a certificate to operate in a territory already served by a certificate holder under this act, or any other common carrier, where the public convenience and necessity in such territory are not being reasonably served by some other certificate holder or other common carrier, provided, that the existence of a railroad or other motor vehicle carrier in the territory sought to be served by such applicant shall not be sufficient cause for a refusal to grant him a certificate, but may be considered by the Commission as constituting good cause for limiting the number of vehicles which such applicant may operate on the route mentioned in his application. In all other cases, with or without hearing, the Commission may issue said certificate as prayed for; or, for good cause shown, may refuse to issue the same, or may issue it for the partial exercise only of the privilege sought."

3b. This section further continues as follows: "The Commission may, at any time, by its order duly entered after a hearing had upon the notice to the holder of any certificate hereunder, and an opportunity to such holder to be heard, at which it shall be proved that such holder has wilfully violated or refused to observe the laws of this State touching motor vehicle carriers, or any of the terms of his certificate, or any of the Commission's proper orders, rules or regulations, suspend, revoke, alter, or amend any certificate issued under the provisions of this act,    *    *    *    provided,.

however, that a certificate when once granted by the Commission shall not be thereafter suspended, revoked, altered or amended for any other cause than hereinabove stated."

On June 28, 1923, the day the said statute went into effect, the Commission, among others, adopted and put into immediate effect the following regulation, namely:

"Rule 14. Applicants' exhibits will show the number of cars to be operated and no additional vehicles may be put into use except for temporary relief, without authority from the Commission."

*T. W. Harrison* and *Harry R. Kern*, for the appellant.

*John R. Saunders, Attorney-General, C. M. Chichester, George Conrad* and *Russell Cather*, for the Commonwealth.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignments of error will be disposed of in their order as stated below.

[1] 1. Can we hold that the Commission erred in its finding of fact, under the statute, that it appeared from the evidence before it that the applicant was not operating, in good faith, on February 28, 1923, over the route for which the certificate was sought?

The question must be answered in the negative.

Of the evidence bearing on the finding in question, it is sufficient to say this: It was in direct conflict upon the question of fact in issue. There were a number of circumstances appearing from the evidence tending to sustain the finding of the Commission in question, of which, however, we need mention specifically only

one.   There was evidence to the effect that the motor vehicle, which the applicant, Gruber, was driving on February 28, 1923, was then, and had been for some months prior thereto, and was thereafter, until May, 1923, operated under a license issued by the city of Harrisonburg to one Jennie Waterman, at the personal direction of Gruber himself; that the bond, required by the city ordinance of Harrisonburg to be given was given in the name of Jennie Waterman; and, further, the State license for the year 1922, covering the motor vehicle which the applicant, Gruber, was driving, as aforesaid, was issued to Jennie Waterman.   That evidence was amply sufficient, as we think, to support the finding that the applicant, Gruber, on February 28, 1923, was not "operating" over said route on that date; since the irresistible inference from such evidence, as against the applicant, Gruber, at least, is that the applicant was at that time a mere servant of Jennie Waterman, the person who was in truth "actually operating" over said route at such time.

[2] In view of the language of the statute, which requires the fact in question to appear "to the satisfaction of the Commission" before the right to the certificate is conferred by the statute, it is apparent that the weight to be given to the evidence on that subject for and against the application, where it is in conflict, is solely for the Commission to determine; and this court has no jurisdiction to disturb the finding of fact of the Commission, unless such finding is plainly wrong because without any sufficient evidence to support it.

[3, 4] 2. Is the statute involved invalid because in conflict with the State and Federal constitutional guaranties to every citizen of his liberty, his privileges and the equal protection of the laws?

The question must be answered in the negative.

It is urged in argument for the applicant that the use of the public highways is a right which is common to all citizens, including common carriers, which they are all entitled to exercise upon equal terms, without any discrimination whatsoever between them; that under said constitutional guaranties the State is obliged to allow all motor vehicle carriers, who may desire to do so, to use the public highways, subject only to such general reasonable rules and regulations as shall apply to all alike—such as the number and character of vehicles that each may use, and the like; and that the preference of right attempted to be given by the statute to those actually using the public highways on the specific date mentioned in the statute, is a discrimination in favor of them in violation of the aforesaid constitutional rights of others of such carriers who may at any time desire to use such highways.

The constitutional guaranties in question have been very recently dealt with by us in the case of *Taylor* v. *Smith*, in which the opinion of the court was delivered by Judge Burks (*ante*, p. 217, 124 S. E. 259), many decisions on the subject—Federal and State—being cited (including *Young* v. *Commonwealth*, 101 Va. 853, 45 S. E. 327, which is the only decision cited and relied on in argument for the applicant upon the question under consideration), many of them being quoted from at length.   We will not repeat in detail what is there said and held.   We deem it sufficient to say here that we consider it settled, both in principle and upon authority, that, notwithstanding the constitutional guaranties aforesaid, no private individual, firm, or corporation has any right to use the public highways in the prosecution of the business of a common carrier for hire without the consent of the State; that such consent may be altogether withheld or granted as a privilege upon

such terms and conditions as the State may prescribe in the exercise of its police power; and that in such exercise of the police power there may be limitations and conditions, and thereby discriminations made between those to whom the privilege is granted and denied, provided the discriminations are based on some reasonable classification which is not purely arbitrary, does not disclose personal favoritism or prejudice, and is fair and just. See *Taylor* v. *Smith, supra,* and cases there cited; to which may be added the following: *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650, 6 S. Ct. 252, 29 L. Ed. 516; *New Orleans, etc.* v. *Rivers,* 115 U. S. 674, 6 S. Ct. 273, 29 L. Ed. 325; *Slaughterhouse Cases,* 16 Wall. 36, 21 L. Ed. 394.

[5] And that such power of discrimination must reside in the State, if the public highways are to be used at all by any motor vehicle common carriers, and the rights of other persons to a reasonable use of them is to be protected, is apparent upon the slightest consideration. For, if the State were obliged to allow every one who may desire to use the public highways as such a carrier to do so, subject only to such general restrictions as shall apply to all alike—as, for example, that each may use only a certain number of vehicles— even if the number allowed to each be reduced to one— it is obvious that such carriers may in time greatly interfere with the reasonable use of some of the improved public highways by the general public.

[6] The discrimination, consisting of the classification in the statute which confers upon motor vehicle carriers who were actually operating, in good faith, over particular routes on the 28th day of February, 1923, is manifestly based on the legislative decision that the number of such carriers operating and the volume of the traffic thus occasioned at that time was only such

as had been brought about by the then existing demand of public convenience and necessity, and hence was then required thereby, and that such number of such carriers and volume of traffic occasioned by them would not in the future unduly crowd the improved highways anywhere in the State to the detriment of the public welfare.    And this, indeed, may be said to be a matter of common knowledge in view of the history of the road improvement and road legislation of the State.    And, that being so, what could be more reasonable, fair and just to the interests of the public, and of all individuals, firms and corporations concerned, than for the legislature to say, as it did, in effect, by that portion of section 3 of the statute first above quoted, that it would not put those motor vehicle carriers out of business who were in business on the date mentioned, but would allow them thereafter to continue to carry on the same volume of business on the improved public highways that they were then conducting—that is, with the same number and capacity of vehicles then in use by them— If they applied for and obtained the privilege, as prescribed by the statute.    We see nothing purely arbitrary in this—nothing of personal favoritism or prejudice.    Indeed, since it was the decision of the legislature that the public welfare did not require that the aforesaid business of motor vehicle carriers, as it existed on the aforesaid date, should be ended or even curtailed, but only that the traffic on the public highways should not be thereafter increased beyond the requirements of public convenience and necessity, it would have been illogical for the legislature to end or even curtail such business as it existed as of such date, if those then doing it applied for the privilege of continuing it as prescribed by the statute.    ·To have done that would have been to have sacrificed private interests, to the extent of the

capital invested and injuriously affected, without any need to do so in order to protect the public welfare.

[7] As to other additional motor vehicle carriers, who might desire also to use the improved public highways, who were not in the business on the date mentioned, the statute provides that they should be granted or refused the privilege as the public convenience and necessity might thereafter require, as ascertained by the Commission in conformity with the other provisions of section 3 of the statute, above quoted. This discrimination also, consisting of classifications which are not arbitrary but reasonable, being based on the requirements of the public convenience and necessity, are plainly not in conflict with the constitutional provisions relied on by the applicant as aforesaid, and constitute valid legislation in the exercise of the police power of the State.

[8] It is further argued in behalf of the applicant that "every motor vehicle carrier," as defined in the said statute, is not "a transportation company," nor "a public service corporation;" that section 153 of article 12 of the State Constitution contains the definition of what is such a company and such a corporation, and makes the possession by them of the power of eminent domain an ingredient essential to their existence; that that power is not possessed by "every motor vehicle carrier," as defined in said statute; and that, therefore, the said statute, by its provisions in section 2, above quoted, declaring every such motor vehicle carrier to be such a company and such a corporation "is in the very teeth of the definition prescribed by section 153 of the Constitution," and, hence, is invalid.

We do not consider this position tenable. It appears from a reading of said section 153 that the definitions contained therein are merely of the "terms * * as

used in this article," namely, article 12 of the Constitution, which article does not at all deal with motor vehicle carriers, or with their use of the highways of the State. The exercise of the police power of the State on the latter subject was left dormant by the Constitution. There is nothing in the Constitution, however, which forbids the exercise of that power by the legislature whenever it should choose to do so. And it has not and cannot be questioned that that power resided in the legislature as representing the sovereign power of the State, in the absence of some provision of the Constitution forbidding its exercise by the legislature. The statute in question embodies the exercise of that power by the legislature for the first time in the history of the State; and the declaration of the statute, that every motor vehicle carrier as therein defined is "a transportation company and a public service corporation within the meaning of the laws of this State, and as such subject to the control, supervision and regulation of the Commission in the manner provided by law," is plainly the expression of the legislative will in such exercise of the police power, untrammelled and unaffected by the Constitution; which, in such case, is the exercise of a sovereign power. This court, therefore, is powerless to hold that such declaration is invalid.

[9] There is one further argument urged in behalf of the applicant upon the question under consideration, namely: That by the Constitution of the State, sections 63 and 64, the legislature is forbidden to enact "any local, special or private law * * creating private corporations" (or) "granting to any private corporation, association or individual any special or exclusive right, privilege or immunity;" that, hence, the legislature itself could not grant a charter to A. to operate a bus line and deny the same right to B., nor could it

confer rights, powers and privileges upon A. and deny them to B.; and that, if by direct enactment the legislature cannot do this, it cannot confer such authority upon the State Corporation Commission by indirect enactment. The answer to this argument is, that the statute in question is not a "local, special, or private law." It is a general law; and, as appears from what is said above, a statute enacted in the exercise of the police power of the State is not invalid merely because, as the result of discriminations based on reasonable classifications, it may chance that certain privileges, in the exercise of which the public interest is concerned, are obtained by some and denied to others.

The case will be affirmed.

*Affirmed.*