STATE, Respondent, v. HEALOW et al., Appellants.

(No. 7,287.)

(Submitted November 8, 1934. Decided December 1, 1934.)

[38 Pac. (2d) 285.]

178

*Mr. George W. Howard* and *Mr. P. E. Geagan,* for Appellants, submitted a brief, and argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, *Mr. George J. Allen,* County Attorney of Park County, and *Mr. Francis A. Silver,* Counsel for the Board of Railroad Commissioners, for the State, submitted a brief; *Mr. Silver* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Francis Healow and F. B. Kemp were prosecuted in Park county for violation of Chapter 184, Laws of 1931. Complaint was first filed in a justice court, where conviction was obtained; whereupon the cause was appealed to the district court.

In that court a jury was waived and the cause submitted upon an agreed statement of facts. The agreed statement admitted that appellants, as operator and driver of an automobile truck, did use, drive, and operate the same upon the public highways of the state of Montana for the transportation of property for hire, and that no certificate authorizing the operation of the same was granted by the board of railway commissioners of the state. The district court found appellants guilty and imposed fines. The cause was then appealed to this court.

It is very evident that the case was brought here in order that a further test might be made of the Motor Carrier Act, Chapter 184, Laws of 1931. The fines imposed were nominal, and the arguments contained in the briefs and presented orally to this court indicate positively that the case is really a test case. In the discussion of the assignments of error, they will be treated accordingly, and therefore we will of necessity discuss the principles involved in a broader and more general manner than would otherwise be the case under different circumstances.

Several assignments of error are urged, but they present but four propositions:

(1) Is the title of Chapter 184, Laws of the Twenty-Second Legislative Assembly (1931), known as the Motor Carrier Act, sufficiently comprehensive to meet the requirements of section 23, Article V, of our Constitution?

(2) Is the Act bad because it grants rights to continue business to those who had acquired certificates to do business under previous statutes of the state in effect at the time of, or before, the effective date of Chapter 184?

(3) Is the Act (Chap. 184) a special law in the contemplation of section 26, Article V, of the Constitution?

(4) Was the appellant Kemp, who was only an employee of, and driver for, the other appellant, Healow, owner of the truck, subject to the penalties of the Act?

It is urged that the Act in question violates section 23, Article V, of our Constitution. That section provides that the subject of every bill, except certain designated ones,

shall be clearly expressed in the title, and forbids the union of separate and distinct subjects. Appellants argue that the Act violates both of these provisions. They contend that the Act itself, considered apart from its title, is designed to regulate the conduct of the business of public or common carriers and to prevent competition between motor carriers and railroads; that the title, considered alone, indicates that the only subject and the sole purpose thereof is to regulate the use of the public highways of the state by carriers for hire rather than their business, and that the provisions of the Act are not germane to the subject expressed in the title. We are of the opinion that this question has been foreclosed by the decisions of this court in the cases of *Barney* v. *Board of Railroad Commrs.*, 93 Mont. 115, 17 Pac. (2d) 82, and *Fulmer* v. *Board of Railroad Commrs.*, 96 Mont. 22, 28 Pac. (2d) 849.

Although the questions of title and subject were not specifically raised in the *Barney Case*, we think the language used by the court in the opinion rendered in that case disposes of every objection urged here. The final decision in that case, after its rehearing, must be considered in the light of the original opinion in the matter. In the original opinion Chapter 184 was held to be unconstitutional in a number of respects. Among other things, it was there said that the Act was not an Act to regulate the use of the highways, that it had no other purpose than to regulate competition between motor and rail carriers, and that the requirement of a certificate of convenience and necessity was not a provision for highway regulation, but one for the control of competition. These declarations in the original opinion in the *Barney Case* constitute, in substance, the arguments advanced here for the purpose of showing a lack of compliance with section 23 of Article V, supra. Thus it may fairly be said that, when the court finally rendered a contrary decision in that case, after a rehearing of the matter, it had in mind the very objections that are now lodged against the Act. All those objections were there overruled in no uncertain terms. It was held that the purpose of the Act as expressed in its title is "made plain."

Furthermore, the court held that "regulation by means of such certificates is reasonably devised to protect the public from abusive use of the roads," and that "the purpose of the 1931 Act is to further regulate the use of the highways."

The entire decision in the *Barney Case,* in order to attain the final conclusion there reached, had to and did demonstrate that Chapter 184 of the Laws of 1931 was a regulation of the use of the highways, and not a regulation of the business of those using the highways. If the chapter was a regulation of the business of those using the highways, the result could be none other than the pronouncement in the first opinion. The interpretation of Chapter 184 as finally announced by this court in the *Barney Case* was in accord with the title of this Act, namely, "An Act Providing for the Supervision * * * of the Use of the Public Highways of the State of Montana." To now declare the purpose of the Act to be as contended for by the defendants would require the overruling of the *Barney Case.*

In the *Fulmer Case* this court did not assume to pass upon the point now involved, because it had not been raised. In that case, however, as in the *Barney Case,* the language of the court in disposing of other constitutional objections is sufficiently comprehensive to meet the contentions which defendants have advanced here.

The only provision of the Act which defendants can properly question here is the one requiring them to obtain a certificate of convenience and necessity. (Sec. 8 (a).) They cannot question other provisions which have no application to their case. (*State* v. *Johnson,* 75 Mont. 240, 243 Pac. 1073.) Under the authority of the *Barney* and *Fulmer Cases* it is manifest that this provision of the Act is sufficiently germane to the subject expressed in the title to satisfy the requirements of section 23, Article V, of the Constitution. This conclusion is amply sustained by the interpretation and construction heretofore placed by this court upon the section of the Constitution invoked here. (See *Arps* v. *State Highway Com.,* 90 Mont. 152, 300 Pac. 549, and authorities therein cited.)

For a better understanding of the next two (second and third) propositions it is important to have in mind that the law under consideration (Chap. 184) is in effect a re-enactment of an existing law (Chap. 154, Laws of 1923), with amendments and additional provisions. This court had occasion to give intensive and careful consideration to the previous enactment, and in a well-considered opinion discussed and construed the more important principles involved in the Act of 1923. (*Northern Pac. Ry. Co.* v. *Bennett,* 83 Mont. 483, 272 Pac. 987.)

Again, after the passage of Chapter 184, the court gave consideration to that Act, and, after two arguments and mature consideration, sustained the law against attacks similar in many respects to those urged here. (*Barney* v. *Board of Railroad Commrs.,* 93 Mont. 115, 17 Pac. (2d) 82.) Still later, and within the current year, Chapter 184 was again attacked and brought into question. The court again gave consideration to alleged defects then urged against the law. (*Fulmer* v. *Board of Railroad Commrs.,* 96 Mont. 22, 28 Pac. (2d) 849.)

It seems to us that, by any fair construction of the three opinions mentioned, it must be manifest that this court has sustained the law (Chap. 184) against the character of objections urged in the two propositions now under consideration. To hold otherwise would be to recede from the principles therein enunciated.

The contention that the law is special because it provides that holders of licenses under the old law could receive certificates of public convenience and necessity and operate without again making application and submitting evidence as to such issues is not tenable. The provision involves the principle known as "the grandfather clause." Such a provision is quite common in the motor carrier enactments of the different states; and it has been very generally sustained upon the theory that those carriers who had previously established the right to receive certificates and operate under a prior existing law of similar import superseded by a new Act should

not be burdened with the obligation of establishing anew the facts once established in accordance with the then controlling statute. (*Gruber* v. *Commonwealth,* 140 Va. 312, 125 S. E. 427; *Sheets Taxicab Co.* v. *Commonwealth,* 140 Va. 325, 125 S. E. 431; *Royal Green Coach Co.* v. *Public Utilities Com.,* 110 Ohio St. 41, 143 N. E. 547; *State ex rel. Department of Public Works* v. *Inland Forwarding Corp.,* 164 Wash. 412, 2 Pac. (2d) 888; *Ex parte Sepulveda,* 108 Tex. Cr. Rep. 533, 2 S. W. (2d) 445.)

The principle is the same as that involved in the multitudinous laws governing the right to practice professions and to engage in numerous specially regulated lines of business activity. The erection of new standards of qualification by laws relating to them seldom contemplate the re-examination and relicensing of those previously licensed and actually operating under the terms of a law in effect at the time of the issuance of the original license. The provision is not obnoxious to, but rather consonant with, generally recognized principles of fairness and justice.

The contention that the Act itself (Chap. 184) is in derogation of section 26, Article V, of the Constitution, is predicated upon the theory that it constitutes special legislation, in that special rights and privileges are extended to existing carriers, and specifically that the Act provides that the board of railroad commissioners, in the consideration of applications for certificates, must give consideration to the transportation service being furnished, or that will be furnished, by any railroad or other existing transportation agency, etc. Defendants assert that the effect of that provision is to confer a special or exclusive privilege, immunity, and franchise in the use of the highways upon those already engaged in the carrier service at the time of a given application.

It is argued that this court in the *Fulmer Case,* supra, made an erroneous construction of the law; that the commission charged with the execution of the law was thereby led into error, and, as a result thereof, is proceeding wrongfully. In support of that contention, defendants quote from opinions of the board rendered both before and after the rendition of the

opinion in the *Fulmer Case*. It is obvious that defendants' quarrel is not with the board or with the court, but rather with the legislature. Their trouble finds basis in the legislative declaration. In the *Fulmer Case* we endeavored to distinguish between the rights and functions of the executive branch of the government as represented by the board. We held, in conformity with universal authority, that the board could not be controlled by the court in the proper exercise of its powers. What we said there as to the division and distribution of powers between the departments of state is convincing here as between the legislative and the executive branches of government. The board has no power to write a law. It can only administer what is given to it by the legislative branch. As we indicated in the *Fulmer Case*, its power is supreme within its proper field. As long as it stays within its appropriate sphere, the courts cannot and will not interfere; but, when it attempts to exceed this authority, or refuses properly to exercise the powers reposed in it, the courts will be alert to compel a proper discharge of duty.

All the departments of state are alike controlled by the Constitution. The legislative branch is no more immune from constitutional restriction than are the other departments. It cannot enact local or special laws; that is fundamental. Defendants say it did so in this case. We cannot agree with the contention. The provisions of the Act require that the board must give attention to certain enumerated considerations, among them being the existing transportation facilities, etc. The board cannot escape doing this. We emphasized that fact in the *Fulmer Case*, as based upon the declaration of this court in *State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, 186 Pac. 697. There the defendant board had made an assessment without taking into consideration certain elements of value alleged to be inherent in the property assessed. This court did not attempt to reassess the property, but it did require the board to reassemble and make a new assessment, taking into consideration all the elements of value.

The board of railroad commissioners cannot be required by the legislature to do an unconstitutional thing. If the legislative enactment contains an unconstitutional provision, the board is nevertheless still bound by the supreme law, the Constitution. While the legislature does not have the right to single out individuals or classes and command the issuance of certificates to them, it does have the right to require the board to give consideration to their claims and interests before finally exercising its undoubted and exclusive prerogative.

The rights of railroads in such matters does not present a new question. This matter has been before the supreme court of the United States. In a recent case (*Sproles* v. *Binford,* 286 U. S. 374, 52 Sup. Ct. 581, 587, 76 L. Ed. 1167) the Chief Justice, speaking for the whole court in the discussion of such a question, used the following language: "It is said that the exception was designed to favor transportation by railroad as against transportation by motor trucks. If this was the motive of the Legislature, it does not follow that the classification as made in this case would be invalid. The state has a vital interest in the appropriate utilization of the railroads which serve its people as well as in the proper maintenance of its highways as safe and convenient facilities. The state provides its highways and pays for their upkeep. Its people make railroad transportation possible by the payment of transportation charges. It cannot be said that the state is powerless to protect its highways from being subjected to excessive burdens when other means of transportation are available. The use of highways for truck transportation has its manifest convenience, but we perceive no constitutional ground for denying to the state the right to foster a fair distribution of traffic to the end that all necessary facilities should be maintained and that the public should not be inconvenienced by inordinate uses of its highways for purposes of gain. This is not a case of a denial of the use of highways to one class of citizens as opposed to another or of limitations having no appropriate relation to highway protection." All the reasons assigned by the learned Chief Justice are cogent

and convincing here. In addition, the legislature may well have had in mind the fact that the highways of this state were not adequate to carry a considerable part of the general traffic, and that they could not be made so without great expense to the people.

The decisive element, however, is the fact that there was no attempt made in the law to control the discretion of the board by legislative direction. The matters prescribed for consideration by the board were general in their character, and, when the Act is viewed as a whole, the fact still remains that all that is required is that the board must give a full hearing to all interested parties; and, when it has done that, it must then make decisions for itself on its own responsibility, based upon all the evidence and facts before it. While matters required to be considered by the board, as we have suggested, have a direct relation to the subject matter of every application and are germane to the questions that must be decided, they may not be controlling in a given case, and certainly cannot always be controlling. They must be considered as rules of procedure, requiring the board to inquire into, and take into consideration, the general fact situation existing in each case. It does not follow that the board must always give preference to existing and operating carriers. It only means that the board must have all facts before it as a prerequisite to final action.

Defendants' criticism of the action of the board in adopting a general rule may be pertinent. The legislature never intended to command, and it did not command, that preference be given. It only said: Hear all, view all, consider all, and then decide each case on its merits and in the light of the record before you. That being true, we cannot escape the conclusion that the Act is a general one, and that it is not in any sense local or special, and that it does not come under the ban of the constitutional provision here urged against it.

The contention that defendant Kemp was not subject to the penalty of Chapter 184, because he was only an employee and driver working for his co-defendant, Healow, is not

meritorious. The provisions of the Act are broad enough to cover and to extend to both principals and employees.

An examination of the record and a consideration of all the points raised and urged lead to the conclusion that the judgment must be affirmed. Accordingly, the judgment of the lower court is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. JUSTICE ANGSTMAN, concurring in part and dissenting in part:

The first question discussed in the foregoing opinion is whether Chapter 184, Laws of 1931, violates section 23, Article V, of our Constitution, as contended by defendants. My associates say that the question has been foreclosed by the cases of *Barney* v. *Board of Railroad Commrs.*, 93 Mont. 115, 17 Pac. (2d) 82, and *Fulmer* v. *Board of Railroad Commrs.*, 96 Mont. 22, 28 Pac. (2d) 849, 855. With this I do not agree. In the *Barney Case* no mention was made of section 23, Article V, of our Constitution. It dealt only with other constitutional provisions. General expressions used in a court's opinion are to be taken in connection with the case under consideration. (*Williams* v. *Anaconda Copper Min. Co.*, 96 Mont. 204, 29 Pac. (2d) 649.) Whether general expressions used in the *Barney Case* to sustain the Act against certain objections can be relied upon to sustain the Act as against a different objection, as here, ought to receive the consideration of this court.

Section 23, supra, provides as follows: "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed."

In the *Barney Case,* as against the objection there made, much stress was laid upon section 22 of Chapter 184, which provides as follows: "Nothing in this Act shall be construed

as converting or attempting to convert a private carrier into a common carrier, and it is hereby declared that this Act is intended primarily as a regulation of the public highways of the State of Montana." It was this legislative declaration that was held to be "entitled to gravest consideration" in the *Barney Case*. The question here is: Is such a declaration in the body of the Act (which is about the only thing in the Act which conforms to the title) sufficient to meet the requirements of section 23, Article V, when many, if not all, of the other provisions of the Act have nothing to do with the regulation of the use of the highways of the state? The *Barney Case* does not answer the question.

In the *Fulmer Case* I took the view that the contention of defendants here made has merit, and that certain portions of Chapter 184 are in conflict with this section of the Constitution. My views are set out in a dissenting opinion in that case. The majority opinion in the *Fulmer Case,* instead of passing upon the question, or instead of holding that the question was foreclosed in the *Barney Case,* declined to pass upon it and, in effect, reserved the question for further consideration. In that opinion it was stated as follows: "Some question as to the sufficiency of the title of the Act (Chapter 184, supra) was suggested after the argument of the appeal in this court. The matter was not presented to the trial court; hence it had no opportunity to pass upon it. No assignment of error was, nor could have been, made with reference to it on appeal, and no mention thereof occurred either in the briefs or on oral argument. Were we to act upon the suggestion and find it meritorious, we would be compelled to reverse the judgment on a ground not advanced to, nor considered by the lower court in arriving at its conclusion. Under the circumstances, therefore, we have refrained from a discussion of the point and do not now assume to pass upon it."

It seems to me that it cannot now be said that either the *Barney* or *Fulmer Case* determines the question whether Chapter 184, or any part of it, meets with the requirements of section 23, Article V, of our Constitution. For the reasons stated

in my dissenting opinion in the *Fulmer Case*, I think the chapter offends against section 23 of Article V. Had the majority opinion in either the *Barney* or *Fulmer Case* determined the question adversely to defendants' contention here, I would now be constrained to adopt that conclusion on the ground of *stare decisis*, but, as stated above, I think neither of those cases decides the question here presented.

On one other point I disagree with the majority opinion in this case. Defendant Kemp was simply an employee of defendant Healow. The question then is: Can the judgment against him stand?

Subdivision (h) of section 1 of Chapter 184 defines a "motor carrier" as follows: "The term 'motor carrier,' when used in this Act, means every person or corporation, their lessees, trustees, or receivers appointed by any court whatsoever, operating motor vehicles upon any public highway in the State of Montana for the transportation of persons and/or property for hire, on a commercial basis either as a common carrier or under private contract, agreement, charter, or undertaking."

Kemp, according to the agreed facts, was an employee of Healow and the operator in control of the truck. He was not, however, transporting persons or property for hire as a carrier. He was simply driving the truck for a daily wage paid by his employer, and not by the persons transported or by the owners of the property transported. Nowhere in the Act is there provision made whereby he must obtain a permit. Neither is there a provision in the Act prescribing a penalty for the employee of an individual carrier driving a truck where the owner has not obtained a permit. True, subdivision (b), section 2, makes it unlawful for an employee to operate otherwise than in accordance with the provisions of the Act. It provides: "It shall be unlawful for any corporation or person, its or their officers, agents, employees, or servants, to operate any motor vehicle for the transportation of persons and/or property for hire on any public highway in this State except in accordance with the provisions of this Act."

Section 19 prescribes the penalty and reaches employees of a corporation, but not of an individual. It provides: "Any motor carrier, subject to the provisions of this Act, or, whenever any such motor carrier is a corporation, any director or officer thereof, or any receiver, trustee, lessee, agent, or persons acting for or employed by such corporation, who violates or fails to comply with or who procures, aids, or abets in the violation of any provision of this Act, or who fails to obey, observe, or comply with any lawful order, decision, rule or regulation, direction, demand, or requirement of the board, or any part of provisions thereof, shall be deemed guilty of a misdemeanor and shall, upon conviction thereof, be punished by a fine of not less than Five Dollars ($5.00) nor more than One Hundred Dollars ($100.00), or by imprisonment in the county jail for a period of not more than thirty (30) days, or by both such fine and imprisonment."

There is an obvious reason for providing a penalty for employees of a corporation and not of an individual carrier. The corporation itself cannot be imprisoned, while an individual carrier can. If the employee of an individual carrier is himself a "motor carrier," within the meaning of the Act, then he is subject to the fee prescribed by section 16, in addition to the fee paid by his employer; also he must make the application and pay the prescribed fee provided by other sections of the Act which apply to all motor carriers. Such a construction of the statute is, I think, unwarranted.

In my opinion, if Chapter 184 is valid in all respects, still the judgment against defendant Kemp cannot stand, because the penal provisions of the statute do not apply to an employee of an individual carrier operating without a permit.

I agree with the result reached by the majority to the effect that Chapter 184 does not conflict with section 26, Article V, of our Constitution, but not with all that is said on that subject.