STATE ex Rel. DuFRESNE, Relator, *v.* LESLIE et al., County Commissioners, Respondents.

(No. 7,463.)

(Submitted September 16, 1935. Decided October 8, 1935.)

[50 Pac. (2d) 959.]

*Messrs. Freeman, Thelen & Freeman,* for Relator, submitted
a brief; *Mr. J. P. Freeman* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Enor K.
Matson,* Assistant Attorney General, for Respondents, submitted
an original and a reply brief; *Mr. Matson* argued the cause
orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an original proceeding in which the relator seeks a
writ of mandate to compel the board of county commissioners
of Cascade county to enter into a contract with him pursuant
to the provisions of Chapter 149 of the Laws of 1935, relative
to the payment of delinquent taxes.

The relator is the owner of certain real property in the city
of Great Falls upon which the taxes are delinquent for the
years 1927 to 1933, inclusive, and for the first half of 1934.
Certain exhibits are made a part of relator's petition, and from
such exhibits it appears that the relator has complied with the
requirements of Chapter 149 in all matters necessary to entitle
him to claim the privileges provided by the Act. The respond-
ent board admits the sufficiency of relator's proceedings be-
fore the board, but refuses to comply with his demand to enter
into a contract as provided by the Act on the ground that the
Attorney General holds the Act contravenes numerous provi-
sions of both the Federal and State Constitutions.

After being formally advised of the ruling of the board, relator
brought this action to determine his rights under the Act. His
petition was filed June 28, 1935. The alternative writ and
order to show cause were issued as prayed for, and September
16, 1935, was set for hearing on the order. On July 13 the

Attorney General, representing the county board, filed a motion to quash both the petition and the alternative writ on the grounds that "neither the petition for writ of mandate nor the alternative writ of mandate states, nor do both of them together state facts sufficient to show that the relator is entitled to a writ of mandate as prayed for herein, nor to any relief whatever." The motion to quash, being equivalent to a general demurrer, brings the controversy before us on the law. (*State ex rel. State Publishing Co.* v. *Hogan,* 22 Mont. 384, 56 Pac. 818.)

The first constitutional question raised by the Attorney General is that the Act contravenes the provisions of section 39, Article V, of the Constitution of the state of Montana. A preliminary question is presented here for solution which we will deal with before considering the constitutionality of the Act as a whole. This question involves the constitutional limitations restricting the powers of the legislature.

With the evident intention to provide by law to extend certain emergency relief to taxpayers, who by reason of the depression were unable to pay their taxes, the legislative assembly, in the enactment of Chapter 149 at the 1935 session, has given us a perfect illustration of the exercise of absolute power. In that Act the legislature in effect declares it is independent of a plain provision of the Constitution, by providing in the Act that it shall not be deemed or construed to do what it was expressly intended to do—postpone payment of an obligation due the state.

To recall to mind the meaning of pertinent constitutional provisions and restrictions, well known and acknowledged, we think it well to recount such as are pertinent here. Amongst such provisions and restrictions are that the sovereign power of the state rests in the people. The legislative assembly, as the authorized representative of the people, exercises this sovereign power. In vesting the power in the legislature to give expression to their will in enacting laws the people, by the Constitution, provided a check upon the legislature, reserving the power to measure legislative Acts by the fundamental law, and if not

in harmony therewith, to nullify such Acts. The exercise of this reserve power was vested in a co-ordinate branch of the state government, the judiciary. The power exercised by courts in declaring legislative Acts invalid has been frequently criticised. The consideration of this question is greatly clarified by the reasoning on the subject in Cooley's Constitutional Limitations, which we think it appropriate to recount here. At pages 333 and 334 of volume 1 (8th ed.) it is said: "The courts may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the paramount law, whenever a legislative enactment comes in conflict with it. * * * In exercising this high authority, the judges claim no judicial supremacy; they are only the administrators of the public will. If an Act of the legislature is held void, it is not because they have any control over the legislative power, but because the Act is forbidden by the Constitution, and because the will of the people, which is therein declared, is paramount to that of their representatives expressed in any law."

It is very clear that, except for the limitations placed upon the power of the legislature, first, by the Constitution of the United States and, second, by the Constitution of the state, the will of the legislative body may be freely exercised in all legislative matters unrestricted. Hence, to determine in what manner and to what extent the legislature exceeded its powers in the enactment of Chapter 149, that Act must be examined and compared with the constitutional provisions with which it is alleged it comes into conflict. If this process reveals that the legislature has attempted to exercise any power withdrawn from it by the Constitution, the Act must be declared invalid in that particular.

The extent to which the legislature may exercise the sovereign power of the state is clearly defined in such decisions as *Hilger* v. *Moore, County Treasurer,* 56 Mont. 146, 182 Pac. 477, where

it is said: "The state Constitution is not a grant of, but a limitation upon, power exercised by the several departments of state government." In *State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161 Pac. 309, it is said that "the authority of the legislature, otherwise plenary, will not be held circumscribed by implication; but one who seeks to limit it must be able to point out the particular provisions of the Constitution which contains the limitation in clear terms." These and numerous other similar decisions express like conclusions universally admitted. In other words, the legislature, representing the sovereign power of the state, may exercise such power to any extent it may choose, except to the extent it is restrained or limited by the State or Federal Constitutions.

In considering the validity or invalidity of legislative Acts, ▇▇▇ we are governed by well-established rules. One is that every doubt must be resolved in favor of the validity of the legislative Act. (*Hale* v. *County Treasurer,* 82 Mont. 98, 265 Pac. 6; *O'Connell* v. *State Board of Equalization,* 95 Mont. 91, 25 Pac. (2d) 114, and cases cited.) A second is that while legislative construction of a statute is entitled to consideration, it is not binding on the courts. (*State ex rel. Judith Basin County* v. *Poland,* 61 Mont. 600, 203 Pac. 352; *Wells Fargo & Co.* v. *Harrington,* 54 Mont. 235, 169 Pac. 463; *McClintock* v. *City of Great Falls,* 53 Mont. 221, 163 Pac. 99; *Northern Pacific Ry. Co.* v. *Brogan,* 52 Mont. 461, 158 Pac. 820.) A third is that with reference to the subjects upon which the Constitution assumes to speak, its declarations are conclusive upon the legislature. (*State ex rel. Pierce* v. *Gowdy,* 62 Mont. 119, 203 Pac. 1115.) A fourth is that constitutional provisions are conclusive upon the legislature and prevent the enactment of any law which extinguishes or limits the powers conferred by the Constitution. (*State ex rel. Bonner* v. *Dixon,* 59 Mont. 58, 195 Pac. 841.) A fifth is that the state government being divided into three separate and distinct branches, the officials of one branch may not usurp or exercise the powers of either of the others. (Sec. 1, Art. IV, Constitution of Montana; *State ex*

*rel. Hillis* v. *Sullivan,* 48 Mont. 320, 137 Pac. 392; *Fulmer* v. *Board of Railway Commrs.,* 96 Mont. 22, 28 Pac. (2d) 849.) A sixth is that the Constitution vests in the courts the exclusive power to construe and interpret legislative Acts, as well as provisions of the Constitution. (Sec. 3, Art. VIII, Const.) The soundness of these provisions of law and the rules enumerated will not, we think, be questioned.

Paragraph 1 of section 6 of Chapter 149 provides as follows: "This Act shall not be deemed or construed as a release or postponement of any tax or assessment due, but solely as a method whereby the taxpayer may pay said taxes or assessments over a period of time." It is clearly obvious that the legislature was cognizant of the fact that there was a constitutional barrier in the way of the exercise of any right given the taxpayer by Chapter 149, and therefore an attempt was made to brush that barrier aside by the paragraph recited above. By this attempt the legislature violated the third rule heretofore mentioned, in that the Constitution has spoken on the subject Chapter 149 attempts to deal with, and the constitutional mandate clearly conflicts with the provisions of the chapter. It violates the fourth rule laid down above, in that it attempts to extinguish or limit the power to interpret and construe constitutional provisions which is vested by the Constitution exclusively in the courts. It violates rules 5 and 6 above, for the same reason. On this subject it was said, in substance, by the Supreme Court of the United States, in *United States* v. *Reynes,* 9 How. 127, 13 L. Ed. 74, and again in *Williams* v. *Suffolk Ins. Co.,* 13 Pet. 415, 10 L. Ed. 226, that the constitutionality of a statute is one for judicial, and not legislative, determination. In *Commonwealth of Massachusetts* v. *Mellon,* 262 U. S. 447, 43 Sup. Ct. 597, 67 L. Ed. 1078, it was held, in effect, that it is the duty of the judiciary to interpret and apply the law, and no other department may invade its province. (See, also, *State ex rel. Goodman* v. *Stewart,* 57 Mont. 144, 145, 187 Pac. 641.) These citations but express conclusions that are self-evident, but the occasion seems to require their repetition here.

If a legislative body were conceded to have the power to enact a law by which the plain and unmistakable meaning of a constitutional provision could be evaded, as we think was done by the enactment of Chapter 149, then the legislature would be placed above the Constitution; all the fundamental guaranties protecting persons and property, assured by that instrument, could be abrogated by a simple legislative declaration such as is contained in section 6 of the Act. We do not say that such abuses would arise if the Act were upheld. We think quite the contrary. But we do not intend to give approval to any Act under which such abuses could find legislative sanction, regardless of the improbability of any attempt being made to give rise to them.

Section 6, in the particular mentioned, is clearly in violation not only of particular provisions of the Constitution, but it challenges the supremacy of the Constitution in any conflict that might arise between the legislative will and the Constitution. To declare section 6 invalid, however, does not meet the contention of the Attorney General that the Act conflicts with section 39, Article V, of the Constitution of the state. The invalidity of paragraph 1 of section 6 does not materially affect the essential provisions of the Act as a whole.

Returning now to the consideration of the general provisions of Chapter 149, section 39, Article V, of the Constitution heretofore referred to, provides as follows: "No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury."

The substantive part of Chapter 149, which gives rise to the contention that the Act is unconstitutional, is section 1 thereof, which is as follows: "All taxes and/or assessments which have heretofore been levied against real property and all taxes which have heretofore been levied against personal prop-

erty and which are also a lien against real property, together with the penalties and interest thereon, and which were delinquent and unpaid on December 1, 1934, except in cases where tax deed has been issued or the certificate of tax sale has been sold or assigned to private persons; may be paid in semi-annual installments extending over a period of not to exceed ten (10) years, under the terms of a contract to be made by and between the Board of County Commissioners of the county wherein such property is located and any taxpayer concerned; provided, however, that no taxes on the property aforesaid which have become due and payable subsequent to December 1, 1934, shall remain unpaid on the date when such contract is entered into.''

The other provisions of the chapter, except section 6 heretofore adverted to, relate chiefly to administrative and procedural details. By comparing the Act with the provision of the Constitution above, we think the conflict is obvious.

We are concerned in this action only with the constitutional meaning of the words ''obligation,'' ''liability,'' and ''postponed,'' as used in section 39, Article V, supra.

Money due by a taxpayer to the state or any of its subdivisions is an obligation or liability in the sense these words are used in the above provision of the Constitution. (*Board of County Commrs. of Custer County* v. *Story,* 26 Mont. 517, 69 Pac. 56; *Sanderson* v. *Bateman,* 78 Mont. 235, 253 Pac. 1100; *State ex rel. Sparling* v. *Hitsman,* 99 Mont. 521, 44 Pac. (2d) 747.) The rule laid down in these cases is supported by common sense and sound reasoning, and we think no further comment is necessary on this point.

It only remains to determine what the Constitution means when it says that no obligation or liability due from any person to the state shall be ''postponed.'' In the long line of decisions of this court where it has had under consideration the construction of any law, this phrase has been used: ''Whenever the language of a statute * * * is plain, simple, direct and unambiguous, it does not require construction—it construes itself.'' (*Cruse* v. *Fischl,* 55 Mont. 258, 175 Pac. 878, and other deci-

458

sions.) "The rules applicable to the construction of statutes are also applicable to the construction of provisions of the Constitution." (*State ex rel. Gleason* v. *Stewart*, 57 Mont. 397, 188 Pac. 904.) With these rules of construction firmly established by our predecessors, there is little left for this court to determine.

The plain, simple, unambiguous and universally accepted meaning of "postponed" is "to defer, to put off; to delay." (Webster's New International Dictionary; Century Dictionary; Bouvier's Law Dictionary, Rawle's Third Revision, and all other authorities investigated.) There can be no doubt that the men who framed our Constitution used the language employed in section 39, Article V, supra, in the usual and accepted sense, and that they intended to prohibit the legislature from doing the very thing that Chapter 149 attempts to do. The sole purpose of the chapter is to postpone the payment of delinquent taxes by providing for their payment in twenty equal semi-annual installments without interest. We deem the Act clearly invalid under section 39 of Article V of the Constitution of the state of Montana.

In view of our conclusion that the Act is invalid as alleged in the first contention of the Attorney General, we deem it unnecessary to take up any of the other questions raised by respective counsel.

The motion to quash is sustained and the proceeding dismissed.

Associate Justices Matthews, Stewart and Anderson concur.

Mr. Chief Justice Sands, absent on account of illness, takes no part in the foregoing decision.

Rehearing denied November 20, 1935.