STATE EX REL. DAVIDSON ET AL., RELATORS, v.
FORD, GOVERNOR, ET AL., RESPONDENTS.

(No. 8446.)

(Submitted June 28, 1943. Decided July 12, 1943.)

[141 Pac. (2d) 373.]

*Messrs. Charles Davidson, Harold M. Mady and Charles E. Pew,* for Relators, *Mr. Pew* and *Mr. John W. Mahan* submitted individual briefs. *Mr. Davidson, Mr. Pew* and *Mr. Mahan* argued the cause orally.

*Mr. R. V. Bottomly,* Attorney General and *Mr. George S. Smith,* Assistant Attorney General, for Respondents, 

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an original proceeding brought pursuant to the provisions of the Uniform Declaratory Judgments Act, sections 9835.1 to 9835.16, Revised Codes, inclusive. The relators seek to have this court construe the provisions of House Bill No. 151 of the 1943 legislative session, page 521, which, among other things, relates to an appropriation of money made for the Veterans Welfare Commission for the biennium ending July 1, 1945.

The Veterans Welfare Act, Chapter 105 of the 1919 Legislative Session, sections 5655 et seq., Revised Codes, inclusive, authorized the creation of the Veterans Welfare Commission, appropriated money for its establishment and operation, and

further authorized the State Board of Examiners to issue and sell bonds in the sum of not more than two hundred thousand dollars for additional funds for the Commission, and at each session of the legislature since 1919 additional moneys have been appropriated for the same purpose. The original Act of 1919 vested broad discretionary powers in the Commission as to the expenditure of the money for the uses appropriated, practically the only restrictions being that the funds should be expended for the general welfare of the soldiers, sailors and marines of World War I, and that the funds "be paid out by the state treasurer on warrants issued by the state auditor on orders drawn by the veterans welfare commission," and records to be kept of all expenditures which should be audited by the State Board of Examiners.

The relators' allege in effect that in the beginning the usual mode of expending state funds was found to be cumbersome, and that with the approval of the Governor, arrangements were made whereby money was withdrawn from the state treasury on orders from the State Board of Examiners and deposited in a local bank subject to the order of the Commission and that such money was paid out on checks drawn by the Commission to the order of veterans as occasion arose. This practice was followed up to the time this action was commenced and relators contend that the mode heretofore followed is the only practical way of handling funds appropriated for the purposes of the Commission, and further contend that such established mode of disbursing the funds cannot be continued under House Bill No. 151. No complaint nor criticism comes from any source as to the distribution of the funds by the Commission, but rather commendation of the unselfish services rendered by the members thereof, and the Commission is opposed to any change in its method of distributing the funds appropriated for its purposes.

House Bill 151 is a general appropriation bill covering the two fiscal years beginning July 1, 1943. The bill has this title: "An Act to appropriate money for the operation, maintenance and other purposes, as designated herein for all state depart-

ments, boards, bureaus, commissions and institutions, for the period beginning July 1, 1943, and ending June 30, 1945.'' Some sixty or more separate appropriations are made by the bill for various executive offices, boards, bureaus, commissions, etc. The appropriation for the Veterans Welfare Commission for the year beginning July 1, 1943, appears on pages 534 and 535 of the Session Laws of the 1943 session and is in these words: ''Veterans Welfare Commission From The General Fund

''For salaries and expenses, eighty-five hundred dollars........ $8,500.00

''The sum of fifty thousand dollars ($50,000.00) to be used by the veterans welfare commission by order of the board of examiners at such times and in such amounts as may from time to time appear to said board of examiners to be necessary; no portion of said sum shall be spent for salaries or expenses of administration or for attorney's fees, and all claims shall be paid in the same manner as other claims are paid, and shall be paid out of the state treasury on warrants issued by the state auditor against orders drawn by the state board of examiners. The purpose of this Act is for the encouragement, *aid* and assistance of the men and women returning from service in the present global war; to assist in getting jobs and employment, to provide for the education, training, and comfort, and the physical, material and mental well-being of those who have served in said armed forces.

''The money appropriated under the provisions of this Act shall be paid out by the state treasurer on warrants issued by the state auditor on orders drawn by the state board of examiners.''

The appropriation for the year beginning July 1, 1944, is in these words:
''Veterans Welfare Commission from the General Fund

''For salaries and expenses, eighty-five hundred dollars $8,500.00. The sum of fifty thousand dollars ($50,000.00) to be used by the veterans welfare commission by order of the board of examiners at such times and in such amounts as may from

time to time appear to said board of examiners to be necessary to carry out the purpose of said commission.

"All funds coming into the veterans welfare fund under the provisions of the appropriation shall be used for the benefit of men and women who shall have served in the armed forces of the United States in the present world war, no portion of said sum shall be spent for salaries or expenses of administration or for attorney's fees, and all claims shall be paid in the same manner as other claims are paid, and shall be paid out of the state treasury on warrants issued by the state auditor against orders drawn by the state board of examiners. The purpose of this Act is for the encouragement, aid and assistance of the men and women returning from service in the present global war; to assist in getting jobs and employment, to provide for the education, training and comfort, and the physical, material, and mental wellbeing of those who have served in said armed forces.

"The money appropriated under the provisions of this Act shall be paid out by the state treasurer on warrants issued by the state auditor on orders drawn by the state board of examiners."

It appears from the arguments of counsel for the relators that the attack on the bill is on the ground that it deprives the Commission of the broad discretionary powers it has been permitted to exercise under the original Act of 1919. More specifically the Commission objects to paying such claims as it may approve "in the same manner as other claims are paid, and shall be paid out of the state treasury on warrants issued by the state auditor against orders drawn by the state board of examiners," as provided by the bill. It is probably correct, as contended by the relators, that the mode of payment followed by the Commission under the old law of 1919 was less cumbersome, and relief to veterans could be rendered more expeditiously than under the Act under consideration, but we discover nothing in the procedure provided by the new bill that is not observed and followed by practically all departments, bureaus, divisions and the various other functionaries of the state government in the expenditure

of state funds. We think it well to say, in passing, that the mode followed by the Commission under the 1919 Act was of very doubtful validity and constituted an exception to the prescribed mode that has generally been recognized and followed in all expenditures of state moneys.

The attack on the constitutionality of House Bill 151 is predicated on the grounds that it violates the provisions of sections 23 and 25 of Article V of the Constitution of Montana. These sections respectively provide:

"No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." (Sec. 23, Article V, Constitution of Montana.)

"No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length." (Sec. 25, Article V, Constitution of Montana.)

Relators pursue a rather circuitous course in order to arrive at the conclusion presented here. They desire to have House Bill 151 declared invalid wherein it affects the powers of the Commission as heretofore exercised by it, but, at the same time desire to save the appropriation, and to accomplish that dual purpose it is contended in effect that under section 23 of Article V of the Constitution the appropriation is properly included in the bill, but the provision therein relative to taking certain powers from the Commission and vesting them in the Board of Examiners violates the section in that "more than one subject" is contained in the bill.

The contention is without merit. So long as incidental provisions of an appropriation bill are germane to the purposes of the appropriation it does not conflict with any constitutional provision. (See *State ex rel. Souders* v. *District Court,* 92 Mont. 272, 12 Pac. (2d) 852; *Miller Ins. Agency* v. *Porter,* 93 Mont.

567, 20 Pac. (2d) 643; *State* v. *Healow,* 98 Mont. 177, 38 Pac. (2d) 285; *State* v. *McKinney,* 29 Mont. 375, 74 Pac. 1095, 1 Ann. Cas. 579.) We think this point is dealt with in an able manner by the Supreme Court of New Mexico, whose Constitution contains provisions much the same as our sections 23 and 25 of Article V, supra. That court, having under consideration the identical question involved here, said in *State ex rel. Lucero* v. *Marron,* 17 N. M. 304, 128 Pac. 485, 488:

"To sustain the contention that the general appropriation bill should contain nothing, save the bare appropriations of money, and that provisions for the expenditure of the money, or its accounting, could not be included therein, * * * would lead to results so incongruous that it must be presumed that the framers of the Constitution had no such intent in the adoption of the restrictions referred to. * * *

"Numerous states have provisions similar to that contained in the first part of section 16, supra, which require the subject of every bill to be clearly expressed in its title, and that no bill embracing more than one subject shall be passed, etc., and the courts all uniformly hold that any matter germane to the subject expressed in the title of a bill and naturally related to it is valid. When an appropriation is made, why should not there be included with such appropriation matter germane thereto and directly connected with it, such as provisions for the expenditure and accounting for the money, * * *. What valid objection can be interposed to such a course, so long as the Legislature confines the incidental provisions to the main fact of the appropriation, and does not attempt to incorporate in such act general legislation, not necessarily or directly connected with the appropriation legally made, under the restrictions of the section in question?" This decision was followed in the later case of *State ex rel. Whittier* v. *Safford,* 28 N. M. 531, 214 Pac. 759.

Objection is also made to the clause in the bill that "no portion of said sum shall be spent for salaries or expenses of administration or for attorney's fees, * * *." Whatever one may think as to the wisdom of this restriction on the Commission, it

was within the legislative power to so provide in the bill. It must be remembered that "the Legislature of this state possesses plenary legislative power and authority, except in so far as it is limited by the Constitution of the United States, * * * and by the Constitution of this state." (*State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161 Pac. 309, 311.) This has long been the established rule in this state.

The relators further contend that section 25 of Article V is violated by the bill for the reason that transferring powers from the Commission to the Board of Examiners constitutes an amendment, or revision of existing law, and no reference thereto is made in the title of the bill. We think it sufficient to say as to this contention that the powers that shall be exercised by the State Board of Examiners under the bill relative to the expenditure of appropriations made for the Commission is not an amendment or a revision of any existing law but merely a restatement of the law to correct a practice long exercised that was not in accord with either the statutes or the Constitution, but obviously permitted for the sake of expediting relief in emergency cases such as came within the province of the Commission.

This court has never departed from the rule that no legislative Act shall be declared invalid unless it appears to be so beyond a reasonable doubt. (*State ex rel. Berthot* v. *Gallatin County High School Dist.,* 102 Mont. 356, 58 Pac. (2d) 264, and cases cited; *State ex rel. DuFresne* v. *Leslie,* 100 Mont. 449, 50 Pac. (2d) 959, 101 A. L. R. 1329.

It is our judgment that the provisions of House Bill 151 of the Acts of the 1943 session of the Legislative Assembly are clear and specific and are not in conflict with any provision of the Constitution.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON, ANDERSON and ADAIR concur.

Order Denying Petition for Rehearing.

Petition for rehearing denied October 6, 1943, the court stating that section 195, Revised Codes, upon which the petition for

rehearing is chiefly predicated, does not vest in the Veterans Welfare Commission any power that may not be modified or repealed by subsequent legislation, and therefore the only remedy available to the Commission to correct the alleged evil complained of can be obtained only from the legislature.