ROBERT HILL *v.* STATE OF MONTANA AND WARDEN
FLOYD E. POWELL.

No. 10329.

Submitted August 23, 1961. Decided September 28, 1961.

365 P.2d 44.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

Petition for writ of habeas corpus, brought by Robert Hill, an inmate of the Montana State Prison, appearing pro se.

From the petition it appears that petitioner entered a plea of guilty to a first degree burglary charge in the district court of Cascade County and was sentenced to a term of twelve years in the State Prison on May 27, 1953.

Petitioner was paroled May 31, 1957, and charged with violation of his parole on February 17, 1958. On November 12, 1958, he was again paroled and on March 19, 1959, charged with violation and returned to the State Prison. March 1, 1960, saw him again paroled and remaining consistent he once again violated his parole and was returned to the State Prison where he is presently incarcerated. After each parole viola-

tion the Board of Prison Commissioners forfeited the good time accruing to the petitioner.

Petitioner contends that his discharge date is past due. He alleges that his good time as calculated under section 80-739, R.C.M.1947 (repealed by Section 2, Chapter 117 of the Session Laws of 1955) entitled him to discharge after serving seven years and three months. He alleges that the Board of Prison Commissioners has no authority to forfeit the four years and three months of earned good time because of violations of parole.

Therefore, the issue involved is whether the board has the power to forfeit good time because of a parole violation.

Prior to the enactment of the present good time law, a prisoner could reduce his sentence by earning good time under two statutory provisions, §§ 80-739, and 80-740, R.C.M.1947. Section 80-741, R.C.M.1947, provided for the forfeiture of the good time earned.

In Stephens v. Conley, 48 Mont. 352, 366, 138 P. 189, 192, this court had occasion to construe the good time and forfeiture statutes. In that case this court stated in regard to the forfeiture statute: "* * * Section 9738 (Sec. 80-741, R.C.M.1947) seems to indicate a course of procedure for the board. In order to carry out the purposes of these statutes, the board must investigate the record of every convict, probably at the end of every year of his service, and grant the proper credits if earned, for the sections declare that, if after a credit has once been earned, *the convict commits any of the offenses enumerated,* the board shall, upon proof of the fact, after notice to the convict, *forfeit all deductions of time earned before the commission of such offense.*" Emphasis supplied.

When sections 80-739 and 80-741 were repealed and section 80-740 was amended to its present form, a savings clause was enacted. (Section 80-740.1, R.C.M.1947.) This savings clause provided in part "* * * no person convicted and

sentenced before the effective date shall have his rights and earned good time reduced by the application of this act.'' The only construction which can be placed on this savings clause is that it encompasses both the right to earn good time under the prior laws and the forfeiture provisions existing thereunder.

It was not the intention of the legislature to allow a convict to earn good time under the old laws and yet not be subject to the forfeiture of his good time for misbehavior. If the savings clause saves the right for a prisoner to earn good time under the old law, it also encompasses the old statute by which the good time may be forfeited. Therefore, a prisoner who is earning good time under the prior law is subject to the prohibitions of the forfeiture statute which existed under the old law.

In considering the question whether the Board of Prison Commissioners has the authority to forfeit any good time for a parole violation, we find that the Board has this authority.

Section 80-741, the forfeiture statute which is applicable to prisoners earning good time under the old law, provides for forfeiture of good time for various acts and also for ''any flagrant disregard of the rules of the prison''. The rules of the prison as referred to in this statute would include the rules and regulations in regard to the management of the prison, and the discipline of the convicts which the Board of Prison Commissioners has authority to promulgate.

The petitioner, by his stand that the forfeiture statute is applicable only to prisoners within the wall, has advanced an erroneous premise. The rules of the prison govern a convict wherever he goes while he is serving his sentence. They are applicable to convicts within the walls, to those working on ranches, and to those on parole. The petitioner by advancing the above argument has failed to comprehend the status of a parolee.

It was stated in McCoy v. Harris, 108 Utah 407, 410, 160

P.2d 721, 722, ''Granting of a parole does not change the status of a prisoner; it merely 'pushes back the prison walls' and allows him the wider freedom of movement while serving his sentence. The paroled prisoner is legally in custody the same as the prisoner allowed the liberty of the prison yard, or of working on the prison farm. * * * He is in the custody of the state and serving his sentence outside of the prison rather than within the walls. The parole system is reformatory and founded upon a plan and policy of helping the inmate to gain strength and resistance to temptation, to build up his self control, to adjust his attitudes and actions to social controls and standards; and it aims to extend his liberties and opportunities for normal living within the social fabric as his strength to meet new responsibilities grows and develops.''

In Jenkins v. Madigan, 7 Cir., 211 F.2d 904, 906, the court stated: ''A parole is not a suspension of a sentence. It is a substitution during the continuance of the parole, of a lower grade of punishment, by confinement in the legal custody and under the control of the warden within the specified prison bounds outside the prison, for the confinement within the prison adjudged by the court. While the parolee is out of prison under the parole, he is still serving his sentence.'' See also Commonwealth ex rel. Lerner v. Smith, 151 Pa.Super. 265, 30 A.2d 347.

Therefore, it follows that the violation of one of the rules of prison for which forfeiture of good time could result would be the violation of one's parole, as the parolee is in the eyes of the law still imprisoned.

It has been the practice of the State Board of Prison Commissioners to treat a violation of parole as one of the infractions of the prison rules and regulations which under the forfeiture statute would result in the forfeiture of all good time.

It was stated by this court in Miller Ins. Agency v. Porter, 93 Mont. 567, 575, 20 P.2d 643, 646: ''The contemporaneous

and long-continued practice of officers required to execute or take special cognizance of a statute, is strong evidence of its true meaning. And if the Legislature by its inaction has long sanctioned a certain construction, language apparently unambiguous may be given by the courts such construction, especially if the usage has been public and authoritative.''

The spirit of the good time statutes would not be served if convicts were allowed to evade the conditions placed on the earning of good time by being paroled. The forfeiture provisions should be applicable whether a prisoner is interned within the physical walls of the prison or has been released on parole. It was certainly not the intention of the legislature that a prisoner who has violated the trust and confidence placed in him by the parolling authority should be allowed to retain his good time, when if he had committed the same acts or similar ones within the walls his good time would be forfeited.

Petitioner is likewise in error by contending that the ''new parole laws'', section 94-9821 to 94-9851, R.C.M.1947, are the statutes under which his good time was forfeited. The forfeiture was done by virtue of the statutes under which petitioner earned his good time.

The parole statutes have nothing to do with the forfeiture or earning of good time. The savings clause in the ''new parole laws'' merely saves the rights that petitioner had prior to the enactment of the ''new parole laws''.

Petitioner's rights prior to the enactment of the new laws governing parole were as follows: He was entitled to earn good time under the old statutes and he was subject to the forfeiture of this good time for misbehavior or violation of his parole. Under the ''new parole laws'', petitioner retains the right to earn good time under the old good time statutes and he is subject to forfeiture of this good time. His right to earn good time or to forfeit it for certain acts are the same

412

now as they were before the enactment of the "new parole laws".

In addition, inmates now stand in a better position than they did prior to the enactment of the new parole laws. Under the old parole laws, they were eligible for parole after serving one-half of their term. The "new parole laws" allow a convict to be eligible for parole after serving one-fourth of his sentence. We fail to see how any convict has been prejudiced by the enactment of the "new parole laws".

It appearing that the application lacks merit, the writ is denied and the proceeding dismissed.

MR. JUSTICES ADAIR, DOYLE, CASTLES and JOHN C. HARRISON, concur.