Charles Edward SMITH, Petitioner,

v.

Winston SATRAN, Warden, North Dakota State Penitentiary, at Bismarck, North Dakota, Respondent.

Crim. No. 726.

Supreme Court of North Dakota.

July 17, 1980.

Charles Edward Smith, pro se.

Edwin F. Zuern, Asst. Atty. Gen., Bismarck, for respondent.

Phillip J. Brown, Sp. Asst. Atty. Gen., Bismarck, for North Dakota Parole Department, amicus curiae.

PEDERSON, Justice.

This is an application for a writ of habeas corpus. Charles Edward Smith alleges that he is being unlawfully held in the penitentiary beyond the expiration of his sentence because of unconstitutional or illegal deprivation of "good-time," and urges that this court exercise original jurisdiction and order his release. We decline to do that and we quash the writ.

■ Whether or not the warden has wrongfully deprived Smith of the benefits of good-time under the provisions of Chapter 12–54, NDCC,[1] is a mixed question of fact and law. There has been no evidentiary hearing from which we can extract facts. Although Smith has subscribed and sworn to his application and his brief before a notary public, there are no stipulated facts or affidavits upon which this court can base a decision on the merits without assuming certain facts. An application under the Uniform Post-Conviction Procedure Act would have afforded the means to supply the necessary facts.

In paragraph # 1 of the syllabus by the court in *McGuire v. Warden of State Farm, Etc.*, 229 N.W.2d 211 (N.D.1975), we held:

"The Legislature cannot by any enactment wholly deprive Supreme Court of original jurisdiction to issue and hear the writ of habeas corpus. N.D.Constitution § 87."

The reference in *McGuire* to § 87 of the North Dakota Constitution was prior to the amendment of Article IV, The Judicial Article, in 1976. The only reference to habeas corpus writs from the Supreme Court in the present Judicial Article is by inference found in § 86 that the Supreme Court shall "have original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction."[2]

We said further in *McGuire* that the right to petition the Supreme Court for a writ of habeas corpus in its original jurisdiction is still preserved, but that we may decline to exercise our jurisdiction on the basis that appropriate proceedings had not been had in the district court.

". . . the Uniform Post-Conviction Procedure Act was intended to replace, so far as persons arrested for, or convicted of, violations of criminal law are concerned, the habeas corpus statutes." *McGuire v. Warden of State Farm, Etc., supra*, 229 N.W.2d at 215.

Smith relies upon a statement in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in his argument that habeas corpus is the appropriate remedy in this case.[3] This case held that, after exhausting all state remedies, federal courts would have jurisdiction by habeas corpus; however, this does not specify the form of the state remedies.[4]

■ Under the North Dakota Constitution, §§ 86 and 92, original and remedial writs should only issue when necessary to the proper exercise of the court's jurisdiction. An appropriate showing has not been made in this case.[5]

Smith further argues that pursuant to §§ 27–02–04 and 32–22–04, NDCC, this court should exercise habeas corpus jurisdiction in this case. The pertinent provision in § 27–02–04 states:

"Such court [referring to the supreme court], in the exercise of its original jurisdiction, may issue writs of habeas corpus,

---

1. Both sides in this case agree that good-time should be computed pursuant to the law in effect when Smith was sentenced (Ch. 12–54, NDCC) and not the law in effect now (Ch. 12–54.1, NDCC). "The courts are not in agreement . . . as to whether the modification or repeal of a good-time statute which occurs after the commission of a crime by or the conviction of a certain person is, as applied to such person, invalid as an ex post facto law." Anno.: 95 A.L.R.2d 1265, 1268.

2. The district court authority in § 92, Article IV, North Dakota Constitution, is worded similarly.

3. See also *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), holding that an alleged illegal deprivation of a prisoner's good-conduct-time fell squarely within the traditional scope of habeas corpus in a federal district court.

4. Section 29–32–01(1)(e), NDCC, specifically authorizes post-conviction remedy for a person who has been convicted of, or sentenced for, a crime and who claims "that his sentence has expired . . . or that he is otherwise unlawfully held in custody . . .."

5. Smith previously applied for a writ from the district court. It was denied. The trial court considered the case to be one for a declaratory judgment. There has been no appeal therefrom. On appealability of orders by the district court in habeas corpus matters, see *LePera v. Snider*, 240 N.W.2d 862 (N.D.1976).

mandamus, quo warranto, certiorari, and injunction. In the exercise of its appellate jurisdiction, and in its superintending control over inferior courts, it may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction. Such court shall exercise its original jurisdiction only in habeas corpus cases and in such cases of strictly public concern as involve questions affecting the sovereign rights of this state or its franchises or privileges."

The provision in § 32–22–04 upon which Smith relies is: "The writ [habeas corpus] must be granted by the supreme court, or any judge thereof, upon petition by or on behalf of any person restrained of his liberty within this state." Several other provisions in Chapter 32–22 provide added support for Smith's argument.

The argument, however, ignores the Uniform Post-Conviction Procedure Act (Ch. 29–32, NDCC), and our holding in *McGuire, supra,* that for persons arrested for or convicted of violating a criminal law, the post-conviction remedy has superseded habeas corpus as a remedy in most situations. See also *Bushaw v. Havener,* 247 N.W.2d 62 (N.D.1976); *Kittelson v. Havener,* 239 N.W.2d 803 (N.D.1976); and *Smith v. State,* 236 N.W.2d 632 (N.D.1975), where we have reiterated our holding in *McGuire.*

In *McGuire* and *Kittelson, supra,* we attempted to answer the questions raised because they were unique and needed to be resolved and were fully briefed and argued. In addition, we said in *Bushaw, supra* :

"Should this Court now decide the substantive issues in this case, our previous admonitions that other remedies must first be exhausted will have a hollow ring, and circumvention of legislative directives will be encouraged. Moreover, we think the procedures available under the Uniform Post-Conviction Procedure Act allow a fuller development of the record and a sharper definition of the substantive issues when violations of constitutional rights are alleged. If the decision is adverse to the petitioner when proceeding under the Act, his right to appeal to the Supreme Court within six months is preserved by Section 29–32–09, NDCC. In this manner the petitioner is afforded a full and fair hearing with the entire record available for review." 247 N.W.2d at 64.

An interim legislative study of judicial remedies appears to be warranted to eliminate superseded provisions.

■ Because there are some legal questions which have been briefed and argued here that involve conceded facts and mathematical computation only, it would be an extravagant waste of judicial effort to refrain from dealing with those questions now. We do not wish to leave an impression that we will always seek out a method whereby we will reach the merits without regard to the impropriety of the remedy sought. Without expressly stated circumstances warranting an exception, we will henceforth decline to hear applications for habeas corpus which properly belong under post-conviction remedies.

■ "Even when a prisoner has fully served one of two consecutive terms, the good time earned on the first sentence is not vested. *Hoover v. Taylor,* 334 F.2d 281 (10th Cir. 1964)." See *Desmond v. U. S. Board of Parole,* 397 F.2d 386, 390 (1st Cir. 1968), *cert. denied,* 393 U.S. 919, 89 S.Ct. 249, 21 L.Ed.2d 206 (1968). Prisoners are not entitled to good-time windfall. Good time is purely statutory. 72 C.J.S. Prisons § 21.

■ Parole does not ordinarily end or even suspend the sentence. See *Hill v. State,* 139 Mont. 407, 365 P.2d 44, 95 A.L.R.2d 1261 (1961); 59 Am.Jur.2d, Pardon and Parole, § 10. While some statutory provisions for parole may not contemplate a parole on one sentence so as to permit the prisoner to remain in the prison and to serve another, otherwise consecutive sentence, the North Dakota statute has been regularly interpreted by the Parole Board to permit this type of action. The word "parole" has an ordinary meaning which contemplates termination of confinement. The use of that term in another sense,

without a full explanation, leads to confusion and misunderstanding. Smith does not contend, however, that he is in any way prejudiced by the parole from his first consecutive sentence and does not seek to have that parole set aside. See generally, 67A C.J.S. Pardon and Parole § 39.

■ It is conceded that:

(1) On September 1, 1972, Smith was sentenced to seven-to-fifteen years in the state penitentiary with sentence to commence September 1, 1972.

(2) On September 4, 1973, Smith was sentenced to three concurrent five-year terms, commencing at the end of the sentence prescribed above in (1).

(3) On January 10, 1974, Smith was sentenced to three concurrent five-year terms, commencing at the end of the sentence prescribed above in (2).

(4) On August 9, 1976, the Board of Pardons authorized Smith to commence serving concurrently the sentence prescribed above in (2).

(5) On January 3, 1979, the Parole Board granted Smith a parole effective May 1, 1980, from the sentence prescribed above in (1) to permit the commencement of the sentence prescribed above in (3).

Subject to error in our computation,[6] by applying the rules for diminution of sentence to the penitentiary for good conduct in Chapter 12–54, NDCC, and precomputed, good-time charts furnished by counsel, we find that:

(a) The 7–15 year sentence in (1) above, without any good-time credit, pardon or commutation, would expire on August 31, 1987, but with full good-time credit would expire on January 23, 1982.

(b) The three concurrent 5-year terms in (2) above, without any good-time credit, pardon or commutation, would commence on September 1, 1987, and expire on August 31, 1992, but with full good-time credit would expire on February 7, 1991.

(c) The three concurrent 5-year terms in (3) above, without any good-time credit, pardon or commutation, would commence on September 1, 1992, and expire on August 31, 1997, but with full good-time credit would expire on February 7, 1996.

Two intervening orders have altered the computation. On August 9, 1976, the Board of Pardons permitted Smith to commence serving concurrently with the 7–15 year sentence in (1) above, the three concurrent 5-year terms identified in (2) above. Smith accordingly started earning good time on this 5-year sentence on August 9, 1976. Crediting the full amount of good time authorized, this sentence expired on January 15, 1980.

The second intervening order was that of the Parole Board on January 3, 1979, which, effective May 1, 1980, paroled Smith from the 7–15 year sentence in (1) above, to commence service of his second group of three concurrent 5-year terms identified in (3) above. Smith started earning good-time credit on this 5-year sentence on May 1, 1980, and provided he does not lose any of those credits, he will be eligible for release on October 7, 1983. (His parole on the 7–15 year sentence will, conditionally, also have expired on January 23, 1982.)

Smith has not been unconstitutionally or illegally deprived of good time. He is not entitled to a certificate of discharge at this time.

The writ is quashed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

---

**6.** *It would be helpful to Smith and others in computing time left to serve to think of a sentence in terms of a yardstick, where time served comes off one end and good time comes off the other.*